In the Matter of Nila LECKRONE, Lila Leckrone, Mary Brown, Amy Brown, Angie Brown, and Kevin Leckrone, Dependent Children.

No. 3–380A89.

Court of Appeals of Indiana,
Third District.

Dec. 29, 1980.

Timothy J. Bloom, Bloom, Bloom & Fleck, Columbia City, for appellant.

James R. Heuer, Gates & Gates, Columbia City, for appellee.

STATON, Judge.

After a hearing on the petition of the Whitley County Department of Public Welfare to terminate the parental rights [1] of Myrna Brown and Raymond Brown in their four and a half year old twin girls, Amy and Angie Brown,[2] the trial court granted the petition and entered judgment. Myrna Brown appeals and raises these issues for our review:

    (1) Was the judgment of the trial court contrary to the law?

    (2) Was the court's granting of the petition an abuse of its judicial discretion?

We affirm.

Pursuant to IC 1971, 31–3–1–7(f) (now repealed), the trial court made the following findings:

    "1.  Amy Brown and Angie Brown, children of Myrna Brown, were found to be dependent children and made wards of the Whitley County Department of Public Welfare on August 6, 1976.

    "2.  Since August 6, 1976, the children, Amy Brown and Angie Brown, have resided in a foster home provided by the Whitley County Department of Public Welfare. Prior to August 6, 1976, the Whitley County Department of Public Welfare worked with Myrna Brown and her family on an almost daily basis to keep Amy Brown and Angie Brown from being made wards of the Whitley County Department of Public Welfare; that Myrna Brown was evicted from her home and had no place to care for the children who were then placed in foster homes.

    "3.  After the children were placed in foster homes, Myrna Brown, though gainfully employed, did not make any effort to better her living conditions so as to obtain custody of the children. Myrna Brown associated and lived with a person who provided the children with alcohol and tobacco with her knowledge and consent.

    "4.  Myrna Brown did not contribute to the support of the children though gainfully employed.

---

1. This petition was filed in order to facilitate adoption of the twins should adoptive opportunities arise. *See* IC 1971, 31–3–1–7(e)(4) (now repealed).

2. Amy and Angie Brown were found to be dependent children after a hearing on a Petition Alleging Dependent Children. They were made wards of the Whitley County Department of

Public Welfare and, during the last three years, have been living in foster homes. We note that the court has continuing jurisdiction over these children as reflected by the use of the same cause number for both the Petition Alleging Dependent Children and the Petition to Terminate Parental Rights. *See* IC 1971, 31–5–7–7 (now repealed).

"5. The Children, Amy and Angie Brown have resided in foster homes since August, 1976.

"6. Raymond Brown, putative father of Amy and Angie Brown, has not contributed toward the support of the children nor communicated with them since their birth and that his whereabouts are unknown.

"7. Myrna Brown was offered aid to dependent children, food stamps, homemaker services and intensive care services but the problems which originally let [sic] to the deprivation of physical custody are still present.

"8. The Court finds that the parental rights of Raymond Brown and Myrna Brown should be terminated as to Amy Brown and Angie Brown and that Sharon Persons should be appointed guardian of the persons of Amy Brown and Angie Brown and the legal custody of the children vested in the Whitley County Department of Public Welfare."

When reviewing a case in which the judge has rendered findings of fact, this Court will not set aside the judgment unless it is clearly erroneous. *Lawrence v. Ball State University Bd.* (1980), Ind.App., 400 N.E.2d 179; Ind.Rules of Procedure, Trial Rule 52. We will accept the findings made by the trial court if they are supported by evidence of probative value. In making this determination, we will construe the findings together as well as liberally view them in support of the judgment. *In re Marriage of Miles* (1977), Ind.App., 362 N.E.2d 171.

■ In Indiana, the "clearly erroneous" standard of review of the sufficiency of the

evidence to support special findings of fact does not require a standard of review which is different from that applied when findings of fact are not specially made. A different standard of review is required, however, where a petition for adoption without consent has been granted.[3] *Matter of Adoption of Lockmondy* (1976), 168 Ind. App. 563, 343 N.E.2d 793, 798. Considering the evidence most favorable to the judgment, we must affirm if the evidence clearly, cogently and indubitably establishes one of the statutory criteria for granting an adoption without consent and, thereby, for the termination of parental rights without consent. *Matter of Adoption of Lockmondy, supra,* at 798; *Rosell v. Dausman* (1978), Ind.App., 373 N.E.2d 185, 188.

On appeal, Ms. Brown argues that several of the findings of fact were erroneous in that they were not supported by "clear, cogent and indubitable" evidence. She also challenges the adequacy of the findings as they relate to the provisions in IC 1971, 31–3–1–6(g)(7) (now repealed) and IC 1971, 31–3–1–7 (now repealed).

As mandated by IC 1971, 31–3–1–7(c) (now repealed),[4] the primary concern here is with the "health, welfare and future" of Amy and Angie Brown. It is clear that not only must the best interests of these children be considered in determining whether to terminate the parental rights of Ms. Brown, but such should be of primary importance. *In re Adoption of Dove* (1977), Ind.App., 368 N.E.2d 6, 10; *Matter of Perkins* (1976), Ind.App., 352 N.E.2d 502, 509.

■ Before parental rights in a child may be terminated, the procedural steps, as outlined in IC 1971, 31–3–1–7(e) (now repealed), must be followed. *In re Adoption*

3. Because a petition to adopt a child without the consent of its parent implicitly involves the termination of the parent's rights in the child, we adopt the standard as set forth in *Matter of Adoption of Lockmondy, supra,* at 798.

4. IC 1971, 31–3–1–7(c) (now repealed), provides:

"*When the court terminates parental rights under this chapter* [31–3–1–1 – 31–3–1–12] *its paramount concern shall be for the health,*

*welfare and future of the child* whose adoption is immediately contemplated or who in the future will hopefully be adopted. The purpose of this chapter in regard to the termination of parental rights is to give to unfortunate children who have been bereft of love and parental care the benefits of a home, and of such parental care, and the law should receive a liberal construction to effect this purpose." (Emphasis supplied)

*of Dove, supra,* at 9. Pertinent portions of this statute provide:

"At the hearing on termination of parental rights, the person filling [filing] the petition shall show that reasonable services have, under he [the] circumstances, been provided to the parents or were offered and refused by the parents, which services were designed to aid the parents in overcoming the problems which originally led to the deprivation of physical custody. The effectiveness, if any, of the services, and that, despite the offer or utilization of the services, the problems which originally led to the deprivation of physical custody are still present must also be shown." (Brackets original).

The agency responsible for the child's welfare has a duty to encourage the parent to overcome the problems which led to the deprivation of custody, prior to the termination of that parent's rights in the child. *In re Adoption of Dove, supra,* at 9, n.5.

█ The record indicates that, after being evicted from their rental house, the twins, as well as four of the five remaining children living with Ms. Brown, were placed in foster homes. Based upon the unsanitary conditions in the home[5] and a lack of alternative housing for the seven children and Ms. Brown, the court entered its order determining that Amy and Angie Brown, were dependent children and made them temporary wards of the welfare department.

After their eviction, Ms. Brown and one teen-aged girl moved to a hotel for six months and then into a one-bedroom apartment,[6] where Ms. Brown is still living. During the last three years, the welfare department has tried to assist Ms. Brown with the problems which led to the loss of custody of her children. Not only has the department helped her obtain a FHA loan commitment, but it has contacted realtors and located possible homes for her as well. Unfortunately, however, she has not actively pursued these possibilities, but seems content to remain in her one-bedroom apartment.

The Whitley County Welfare Department has a long history of involvement with the Browns. Since 1970, it has either provided or offered to provide a variety of support services to the family. Furniture, food stamps, Aid to Dependent Children funding, transportation services, homemaker services and intensive case work were offered and often utilized by the family. After the children were removed, many of these same services were still available to Ms. Brown. She apparently, chose not to use them. Despite her assertions to the contrary, we are persuaded that the welfare department has complied with IC 1971, 31-3-1-7(e) (now repealed).

IC 1971, 31-3-1-6(g)(7) (now repealed) provides:

"(g) Consent to adoption is not required of:

\*　　\*　　\*　　\*　　\*　　\*

"(7) a parent or parents of a child who has been cruelly treated or neglected, if the child has been declared an abused, dependent or neglected child by the court of jurisdiction, and the parent or parents deprived of his custody for a period of two years prior to the filing of a petition to terminate parental rights, if there has been little or no change in the environment from which the child was removed;"

█ There is no question that the twins were neglected,[7] that they were declared

---

5. The Browns' caseworker described some of the conditions which led to their eviction by the landlord and to her conclusion that Ms. Brown's housekeeping standards were sub-minimum:

"The beds were very seldom made; clothes were thrown about on the floors and on top of things; there were pieces of paper and food and things found on the floor almost any time you walked in; diaper pails were

not covered; plumbing as I said was partly the house's problem, but also if it was maintained might not have been; the kitchen table was usually dirty and cluttered."

6. The record indicates that the rent for this apartment is $200 a month. Ms. Brown's weekly take-home pay is $109.

7. IC 1971, 31-5-5-2 (now repealed) provides that a "neglected child" is one "whose environ-

dependent children by the court in 1976 and that Ms. Brown has been deprived of their custody for a period of two years prior to the filing of the petition to terminate parental rights. The issue, here, then, is whether there has been a change in the environment from which Amy and Angie were removed.

After the twins had been placed in a foster home, Ms. Brown was granted visitation privileges. During these visits which spanned a period of three years, there were disturbingly frequent events which were indicative of scant improvement in the home environment.

Lila Leckrone, the teen–ager who remained with her mother, testified that when the twins came for their monthly week–end visits, they "slept together in the lower part of the trundle bed, that was pulled apart, the smallest part." During these visits, she said, they were often poorly fed and had no choice but to sleep on soiled bed linens which had been soaked by urine the night before.

Lila also explained that Amy and Angie often called her "Mommy Lila" because she very frequently cooked their meals and took charge of them in a supervisory capacity. When asked if she ever returned the twins to their foster home, she answered:

"Q. Did it ever fall upon you to see that the twins got back to the Bollingers?

"A. Yes.

"Q. Very often?

"A. Yes, quite often.

"Q. Why?

"A. Sometimes she [Ms. Brown] would be too busy. There was a time or two when she had a little too much to drink and she didn't want to take them back so I would have to be sure they got back and I would have to ask a friend to take me to take them back."

The evidence also indicates that the twins frequently became ill during and after these visitations. Their foster mother testified that the twins often vomited after the visits and that one of them had been returned with vomit on her clothing. She also explained that Amy, who has an allergic asthmatic reaction to cigarette smoke, often had breathing difficulties after visiting with Ms. Brown. Once she had to be taken to the doctor for medication after such a visit. Ms. Brown testified that she was aware of her daughter's allergic reaction. She and her boyfriend, however, continued to smoke in the child's presence.

With the "health, welfare and future interests" of Amy and Angie in mind, we conclude that there is clear, cogent and indubitable evidence to support the court's findings. A return to this environment in which there has been little, if any, improvement would not be in the best interests of the twins.

We are also unpersuaded by Ms. Brown's claim that the findings were inadequate. A trial court does not need to recite the evidence in detail as long as the ultimate facts found are stated in the findings. *Salk v. Weintraub* (1979), Ind., 390 N.E.2d 995, 997. Such was the case here. After hearing evidence and viewing the witnesses, the court found that the problems which led to the deprivation of physical custody were still present. This finding is sufficient to support the court's conclusion that there has been little or no change in the home environment.

Ms. Brown next contends that the court's granting of the Petition to Terminate Parental Rights was an abuse of its judicial discretion. We disagree.

■ As an appellate court, we will presume that the trial court was correct in its judgment unless the record shows that it clearly abused its decision making powers. *In re Adoption of Dove, supra*, at 10. We find nothing in the case at bar to indicate that the court's decision was "clearly

ment is such as to warrant the state, in the interest of the child, in assuming its guardianship" or one "who has not proper parental care or guardianship."

against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 812.

Judgment affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.