**In the Matter of the Termination of the Parent-Children Relationship of Gregory Allen FRIES, a Child, and Patrick Ryan Fries, a Child, and Kathryn Fries, their Natural Mother, and Martin Hessler, their Putative Father.**

No. 3–980A264.

Court of Appeals of Indiana, Third District.

March 2, 1981.

Rehearing Denied May 6, 1981.

Jay Lauer, South Bend, for Kathryn Fries.

Douglas N. Hite, Kizer, Neu, Joyce, Hite & Wyland, Plymouth, for appellee.

HOFFMAN, Presiding Judge.

Kathryn (Fries) Schuh appeals the trial court's judgments terminating her parental rights with respect to Patrick Ryan Fries and Gregory Allen Fries. Mrs. Schuh contends that the judgments are unsupported by substantial evidence and are contrary to law.

The record reveals that Kathryn Fries (now Schuh) contacted the Marshall County Department of Public Welfare (DPW) on April 17, 1979. Mrs. Schuh sought to place her two sons for adoption because she had been evicted from her trailer and could no longer provide a home for them. Mrs. Taylor, a caseworker, refused to accept Mrs. Schuh's signature on the termination papers but agreed to place the children in a foster home.

The DPW filed petitions for wardship on April 20, 1979. The trial court granted the petitions on May 11, 1979 and also entered a support order of $7.50 per week for each child. The DPW filed petitions to terminate parental rights on November 27, 1979. The trial court conducted a hearing on the petitions on January 28, 1980. Mrs. Schuh appeared and presented evidence. Neither of the putative fathers appeared. On February 20, 1980 the court entered judgments terminating the parental rights of Mrs. Schuh and the putative fathers.

Mrs. Schuh argues that the DPW did not present substantial evidence to sustain the trial court's determination that the criteria of IC 1971, 31–6–5–4 (Burns 1980 Repl.)[1] had been met. In particular, Mrs. Schuh contends that the DPW did not offer, nor provide, services to assist her in fulfilling her parental obligations. An additional contention is that the DPW failed to meet its burden of showing that the termination would be in the best interests of the children.

In considering whether the evidence is sufficient to support a trial court's judgment terminating parental rights, this Court will not reweigh the evidence nor

1. IC 1971, 31-6–5–4 provides:

"Termination of parent-child relationship involving delinquent child or child in need of services.—A petition to terminate the parent-child relationship involving a delinquent child or a child in need of services may be signed and filed with the juvenile court only by the attorney for the county department or the prosecutor; that person shall represent the interests of the state in all subsequent proceedings on the petition. The petition shall be entitled 'In the Matter of the Termination of the Parent-Child Relationship of .........., a child, and ........., his parent (or parents)' and must allege that:

(1) The child has been removed from his parent for at least six [6] months under a dispositional decree;
(2) There is a reasonable probability that the conditions that resulted in his removal will not be remedied;
(3) Reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective;
(4) Termination is in the best interests of the child; and
(5) The county department has a satisfactory plan for the care and treatment of the child."

judge the credibility of the witnesses. Only the evidence most favorable to the judgment will be considered. *Wardship of Bender* (1976), Ind.App., 352 N.E.2d 797.

The evidence most favorable to the judgment discloses that when Mrs. Schuh initially brought the children to the DPW, Mrs. Taylor scheduled a meeting with her for May 1, 1979. Mrs. Schuh failed to appear for the meeting. Mrs. Schuh, though she had notice, failed to appear at the hearing on the DPW's petitions to establish wardship. Mrs. Taylor testified that she attempted to locate Mrs. Schuh's residence but was unable to do so. On both June 11 and June 15, 1979 Mrs. Taylor saw Mrs. Schuh in downtown Plymouth and asked her to return to the DPW office to discuss the problems. Mrs. Schuh stated that she was too busy to do so. Mrs. Schuh also did not initiate contact with anyone at the DPW office between April 17, 1979 and the time the termination petitions were filed to inquire about the children or to reschedule meetings. Additionally, Mrs. Schuh did not inform the DPW of where she could be contacted.

It is clear that the DPW attempted to have meetings with Mrs. Schuh but failed because Mrs. Schuh would not attend. The DPW cannot offer or provide services if the parent refuses to attend meetings or will not inform the DPW of a change in residence. Here, the DPW did all it could reasonably be expected to do under the circumstances. The DPW therefore has sustained its burden of proof in this regard.

There is also substantial evidence that the termination of parental rights is in the best interests of the children. Mrs. Schuh attempts to limit the factors used in making the best interest determination to those testified to by Mrs. Taylor. These factors are: 1) the mother had not been in contact with the children for at least six months after the order of wardship was entered; 2) the mother had not contributed financially to the support of the children; and 3) the mother had not asked to see the children within the six-month period.

While it is true that the above factors were identified by the DPW, the trial court was required to look beyond these factors to the totality of the evidence in making its determination. In addition to the factors identified by the DPW, the evidence also reveals: 1) Mrs. Schuh initially sought to have children adopted; 2) there were past complaints filed with the DPW against Mrs. Schuh alleging that the children were neglected and suffering from malnutrition; 3) Mr. Schuh would be absent from the home for many years due to his conviction for felony murder; and 4) Mrs. Schuh had recently been convicted of theft, deception and trafficking in a controlled substance. Although it is possible that, standing alone, any one of these factors may be insufficient to sustain a finding that termination of parental rights would be in the children's best interests, when examined together they constitute substantial evidence to support the trial court's determination.

Mrs. Schuh argues finally that the judgments of the trial court are contrary to law in that the condition that resulted in the removal of her children had been remedied by her moving in with her in-laws. Mrs. Schuh assumes that the only reason the children were taken by the DPW was that she was evicted from her trailer and could not provide a home for them.

Although the eviction was the reason behind Mrs. Schuh turning the children over to the DPW, there is evidence that the DPW had been contemplating the initiation of proceedings because of the prior complaints of neglect. Had the eviction occurred without other problems the DPW may have been able to solve the matter in a way less drastic than placing the children in a foster home. It is apparent from the testimony that, in addition to the eviction, the DPW felt that Mrs. Schuh did not properly care for the children. Also apparent is a lack of concern by Mrs. Schuh during the eight months between the DPW taking custody of the children and the termination proceedings. In light of the fact that Mrs. Schuh did not cooperate with the DPW

during those eight months, the trial court's determination that the conditions that resulted in the children's removal will not be remedied is not contrary to law.

For the above reasons the judgments of the trial court are affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.