In the Matter of Benjamin Kirk MYERS and John Thomas Edward Willett, Children Alleged To Be Children In Need of Services.

Patricia MYERS (Willett), Appellant-Respondent,

v.

JENNINGS COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee-Petitioner.

No. 1–680A153.

Court of Appeals of Indiana, First District.

March 9, 1981.

Sarah A. Carter, Legal Services Organization of Indiana, Inc., Columbus, for appellant-respondent.

Michael L. Rogers, North Vernon, Ben J. Weaver, Johnson & Weaver, Indianapolis, for appellee-petitioner.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Patricia Myers (Myers) appeals the judgment of the Jennings County Circuit Court which terminated her parental rights to John Thomas Edward Willett (John) and to Benjamin Kirk Myers (Benjamin). We affirm.

## STATEMENT OF THE FACTS

Ellen Bennett (Bennett), a Jennings County Department of Public Welfare (Department) caseworker, went to the home which Myers shared with another family on August 3, 1978, to investigate a complaint about Myers' care of her children. John, who was two months old at the time, was ill. He had recently been released from the hospital. Bennett and Judy Day, a homemaker for the Department, made several trips with Myers and John to a physician. Also, they assisted Myers in obtaining Aid for Dependent Children so that John and Benjamin, who had a staph infection, could be treated by a physician. On August 30, 1978, the Department filed a petition to have John and Benjamin adjudged children in need of services [1] and a petition for preliminary order pending hearing. The court granted the petition to adjudge the children in need of services and made John and Benjamin wards of the court. The children were then placed in foster homes. On September 17, 1979, the trial court granted the Department's petition for preliminary order pending hearing finding that the children were dependent, neglected, and in need of medical services. The court then placed John and Benjamin in custody of the Department.

---

1. The petition alleged that the children were in need of services under Ind.Code 31–6–4–3 (Supp.1979) which was not to take effect until October 1, 1979. On October 10, 1979, the court, *nunc pro tunc*, revoked its orders granting this petition.

From August 1978 until the hearing to terminate her parental rights in December of 1979, Myers had four different caseworkers. Bennett, Myers' first caseworker, stated that Myers was very cooperative. Myers attended all of her monthly visits with her children except one, for which she had a valid excuse. Because Bennett felt that Myers was not very "motherly," Bennett suggested to Myers that she attend a mothering class offered by a home economist. Myers did so until the class was discontinued. Myers, at Bennett's suggestion, began counseling at Quinco Counseling. She also found employment at the Mucatatuck State Hospital, but was later fired due to extreme absenteeism.

After Bennett left the Department David Grimes (Grimes) became responsible for Myers' case. He encouraged her to act more like a mother and counseled her on what was expected of her by the Department. These expectations were set out in a "contract" signed by Myers and the Department. Under the provisions of the "contract" Myers was to seek employment, pay $10.00 per week to the Department if employed, furnish a home environment suitable to the Department, continue counseling at the Mental Health Center, seek new friends, and free herself from those who are undesirable from the Department's standpoint.

Raymond Burns (Burns) took over Myers' case in March 1979. At that time, Myers informed Burns that she was going to join the military service. In May of 1979, she was discharged from the Air Force due to medical reasons. She contacted Burns, and he informed her of what the agency required in the way of a home. In addition, he volunteered his services for counseling. That was the last contact which Burns had with Myers. Myers contacted Beth Smock (Smock) in August and October to inquire about what had been done about transferring her case to Columbus. Smock knew nothing about it, and further, she knew nothing about three letters which Myers said she had sent to the Department. Myers did request a visit with her children in August when she talked to Smock; however, she was not allowed to see her children until November 7, 1979.

Upon returning from the Air Force, Myers lived in Columbus, Indiana. She had several jobs, for periods of seven to eight weeks each, from which she was either fired or quit. In the fall of 1979, Myers attempted suicide and was admitted to the Quinco Center. At the time of the termination hearing on December 3, 1979, Myers was living in a halfway house in Columbus. She was pregnant by R. D., a man with whom she had lived and who was considered undesirable by the Department since it had been alleged that he had molested one of his children. Myers was unemployed, but was applying for a CETA job at the time of the hearing. She stated that she loved her children, but did not want them until she "got herself up on her feet."

The trial court terminated Myers' parental rights on December 11, 1979.

## ISSUES

Myers raises the following issues for our consideration:

1. Whether the applicable law at the time of the termination hearing was Ind. Code 31–3–1–6(g)(7), –7 (repealed 1979).

2. Whether the trial court erred in applying the statutory criterion for termination found in Ind.Code 31–3–1–6(g)(1) rather than in IC 31–3–1–6(g)(7) (repealed 1979).

3. Whether the Department failed to provide Myers with reasonable services required by Ind.Code 31–3–1–7 (repealed 1979).

4. Whether the evidence is sufficient to support the finding that:

(a) Myers abandoned and deserted her children for a period of six (6) months,

(b) Termination is in the best interests of the children.

## DECISION

*Issue One*

Myers contends the applicable statutes at the time of the termination hearing were

IC 31–3–1–6(g)(7), –7 (repealed 1979) and not Ind.Code 31–6–5–4 (Supp.1979) of the new Juvenile Code.[2] The new Juvenile Code was effective October 1, 1979 except, "this act does not apply to matters in which a court has entered a dispositional decree before October 1, 1979, except that a person authorized to move for modification of judgment may petition the court to apply this act in such a matter." 1978 Ind.Acts, P.L. No. 136, § 59. Myers alleges that the trial court's order placing John and Benjamin in the custody of the Department on August 30, 1978, was a dispositional decree, and hence, IC 31–6–5–4 (Supp.1979) does not apply. This precise issue was decided adversely to Myers in *In the Matter of Charles Damon Miedl,* (1981) Ind.App., 416 N.E.2d 491.

■ In *Miedl,* both children of Glenda Miedl were made wards of the County Welfare Department, Charles in August of 1976 and Shaun in May of 1978. Between August of 1976 and the filing of a petition for termination of parental rights on June 8, 1979, custody of the children was shifted back and forth from the County Welfare Department to Glenda Miedl. Upon appeal of the trial court's October 9, 1979, judgment terminating her parental rights, Glenda argued that the trial court's orders making her children wards of the County Welfare Department were dispositional decrees.

Therefore, she concluded, the new Juvenile Code did not apply. Judge Chipman, writing for this court, stated:

"As applied to the facts in this case, making the children wards of the Department was a 'matter' to which the new Juvenile Code did not apply. The termination of Glenda's parental rights is another 'matter,' in which the court had not entered a disposition decree before October 1, 1979. Therefore, IC 31–6–5–4 applied to the latter proceeding."

*Miedl,* at 493.

■ We find *Miedl* to be controlling and hold that IC 31–6–5–4 (Supp.1979) applied to Myers' termination hearing. However, it appears from the record that the trial court mistakenly applied IC 31–5–7–15 (repealed 1979) and IC 31–3–1–6(g)(1) to the proceedings instead of the provisions of the new Juvenile Code.[3] In addition, Myers and the Department discussed all of the issues which were raised on appeal in terms of the repealed statutes. However, our standard of review of a general judgment requires affirmance if there is any legal theory upon which the trial court's action may be sustained.[4] *Indiana & Michigan Electric Co. v. Schnuck,* (1973) 260 Ind. 632, 298 N.E.2d 436; *Rees v. Heyser,* (1980) Ind.App., 404 N.E.2d 1183. An examination of the record in light of IC 31–6–5–4 (Supp.1979) shows

**2.** The Department alleges that Ind.Code 31–5–7–15 (repealed 1979) is the provision under which the trial court could terminate Myers' parental rights.

**3.** The trial court's orders terminating Myers' parental rights stated in pertinent part:

"The Court further finds that the matters set forth in the petition filed herein are true; and that the prayer thereof should be granted; that the best interests of said child and his health, welfare and future, shall be served by the termination of the parental rights in and between said child and his mother; that said mother has abandoned and deserted said minor child for a period of six (6) months immediately preceding the filing of this petition."
The court's finding of abandonment is the express language used in IC 31–3–1–6(g)(1) which states:

"(g) Consent to adoption is not required of: (1) a parent or parents if the child is adjudged to have been abandoned or deserted

for six (6) months or more immediately preceding the date of the filing of the petition . . . ."
The finding that termination is in the best interests of the child is consistent with IC 31–5–7–15(5) (repealed 1979) which allowed a Juvenile Court to "make such further disposition as may be deemed to be to the best interest of the child." This section had been interpreted as giving a Juvenile Court jurisdiction to terminate parental rights once a child had been adjudged dependent and neglected. *See, In re Perkins,* (1976) 170 Ind.App. 171, 352 N.E.2d 502, *trans. den.*

**4.** Under IC 31–3–1–7 (repealed 1979) a trial court which terminated parental rights was required to make findings upon which the judgment was based. However, under the new Juvenile Code there is no such requirement. *See,* Ind.Code 31–6–4–14(d) (Supp.1979).

that there is sufficient evidence to sustain the termination of Myers' parental rights.

Certain conditions must be met under IC 31–6–5–4 (Supp.1979) before a petition to terminate parental rights is granted under IC 31–6–4–14(d) (Supp.1979). IC 31–6–5–4 (Supp.1979) provides that:

"A petition to terminate the parent-child relationship involving a delinquent child or a child in need of services may be signed and filed with the juvenile court only by the attorney for the county department or the prosecutor; that person shall represent the interests of the state in all subsequent proceedings on the petition. The petition shall be entitled 'In the Matter of the Termination of the Parent-Child Relationship of . . . . . . . . ., a child, and . . . . . . . . ., his parent (or parents)' and must allege that:

"(1) The child has been removed from his parent for at least six [6] months under a dispositional decree;

"(2) There is a reasonable probability that the conditions that resulted in his removal will not be remedied;

"(3) Reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective;

"(4) Termination is in the best interests of the child; and

"(5) The county department has a satisfactory plan for the care and treatment of the child."

■ In determining whether there is sufficient evidence to support a termination of parental rights, we will not weigh the evidence or assess the credibility of the witnesses. If there is evidence of probative value to support the judgment, then we will affirm.[5] *Ray v. Goldsmith,* (1980) Ind.App., 400 N.E.2d 176, *trans. den.*

■ The first criterion which must be shown by a preponderance of the evidence is whether the child has been removed from his parent for at least six [6] months. Judge Chipman in *In the Matter of Charles Damon Miedl, supra,* held that this phrase required the child to have been removed from physical custody of the parent for six months immediately preceding the filing of the petition to terminate parental rights. The evidence is uncontroverted that Myers did not have physical custody of her children since August of 1978. Clearly this criterion has been met.

The second criterion which must be proved is that there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied. Although there is no direct testimony that the conditions will not be remedied, we find that such a conclusion could reasonably be inferred from the evidence presented. From August 1978 until the hearing in December of 1979, Myers sporadically held jobs for one to two months at a time. Also, she did not set up a suitable home for her children. At the time of the hearing, she was once again unemployed, living in a halfway house, and was pregnant. Given the evidence in the record, there was a reasonable probability that the reasons which caused removal of John and Benjamin from Myers' custody would not be remedied.

A third criterion is whether reasonable services have been offered or provided to the parent to assist her in fulfilling her parental obligations, and either the services were ineffective or the parent failed to accept them. A similar requirement of reasonable services existed under IC 31–3–1–7

**5.** Prior to the new Juvenile Code, our standard of review was whether the evidence clearly, cogently, and indubitably established the criteria for termination of parental rights. *In re Adoption of Lockmondy,* (1976) 168 Ind.App. 563, 343 N.E.2d 793. This standard of review was used in termination of parental rights cases since the standard of proof required to sever the parent-child relationship was clear, cogent, and indubitable evidence. *Id.* However, Ind.Code 31–6–7–13(a) (Supp.1979) requires only a showing of the preponderance of the evidence to terminate parental rights. Therefore, our standard of review for sufficiency of the evidence is whether there is evidence of probative value to support the judgment.

(repealed 1979).[6] Myers argues that reasonable services were not provided to her by the Department. She states that the Department did not assist her in locating a residence or provide her job counseling or job training. The question of what constitutes "reasonable services" is one which can not be answered by a definitive statement. Instead, it must be answered on the basis of any given factual situation, for it is clear that services which might be reasonable in one set of circumstances would not be reasonable in a different set of circumstances. In the present case, the Department referred Myers to Debbie Dillard, a counselor at Quinco Counseling. Also, a mothering class was provided until it had to be cancelled because of the home economist's schedule. A contract was entered into between Myers and the Department to encourage her to engage in a program of rehabilitation. Although the Department did not refer Myers to a job training program or help her set up a residence, the Department's caseworkers did inform her what was expected of her and did offer their services to her. There is sufficient evidence to show that the Department rendered "reasonable services" when viewed with the evidence that Myers had several jobs during the one and one-half (1½) year period in question; that she did have an apartment of her own at one time; that she lived with R. D. for an extended period of time; and that her contact with the Department was sporadic after May of 1979.

The fourth and fifth criteria which must be proved are that termination is in the best interests of the children and that the Department has a plan for the care of the children. James Hoss, Benjamin's foster father since April 24, 1979, testified that when Benjamin was placed in his home, the child had emotional problems. Benjamin had nightmares, threw temper tantrums, and was unable to express affection. At the time of the termination hearing, Benjamin had changed significantly; he had become a loving and affectionate boy. Hoss stated that during the time he had recently been gone on a business trip, Benjamin's emotional problems returned. Therefore, Hoss felt that it would be disastrous to remove Benjamin from their home. Hoss stated that he and his wife loved Benjamin very much and intended to adopt him if they could.

William Gerhart, John's foster father since September of 1978, testified that when John came to them from the hospital he had an ear infection and was behind in his small muscle coordination. John has since developed and is now in the normal categories. Further, Gerhart stated, John is a happy child. If William Gerhart and his wife are given the opportunity, they plan to adopt John.

In determining whether termination is in the best interests of the children, "[t]he word 'best' connotes some type of comparison; it is a relative term." *In the Matter of Charles Damon Miedl, supra* at 495. The testimony of Hoss and Gerhart shows that John and Benjamin are living with families who love them and want to adopt them. Also, both boys are happy and have progressed since their placements. In contrast, Myers at the time of the hearing was still unemployed, lived at a halfway house, and was pregnant with a third child. The evidence is sufficient to establish that termination is in the best interests of the children and that the Department has a plan for their care.

Since the evidence is sufficient to support a judgment terminating parental rights under IC 31–6–5–4 (Supp.1979), the trial court's judgment is affirmed.

---

**6.** IC 31–3–1–7(e) (repealed 1979) stated in pertinent part:

"At the hearing on termination of parental rights, the person filling [sic] the petition shall show that reasonable services have, under he [sic] circumstances, been provided to the parents or were offered and refused by the parents, which services were designed to aid the parents in overcoming he [sic] problems which originally led to the deprivation of physical custody. The effectiveness, if any, of the services, and that, despite the offer or utilization of the services, the problems which originally led to the deprivation of physical custody are still present must also be shown."

The other issues raised by Myers need not be discussed since they are raised under IC 31–3–1–6(g)(7), –7, –5–7–15 (repealed 1979) which we found not to be applicable to this case.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.