Charles R. PUNTNEY, Natural Father,
Jeanne Puntney, Natural Mother,
Appellants (Defendants Below),

v.

In the Matter of the Wardship and Support of Charles Ray PUNTNEY and Charles Roy Wesley Puntney, Minors,
Appellee (Plaintiff Below).

No. 1–980A237.

Court of Appeals of Indiana,
First District.

May 26, 1981.

Ray Warren Robison, Bedford, for appellant.

John C. Haury, Bedford, for appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Appellant-respondent Charles R. Puntney (Puntney) appeals from a judgment entered in the Juvenile Court of Lawrence County, Indiana, terminating the parent-child relationship of Puntney and his wife, Jeanne, in and to their two children.

We affirm.

## STATEMENT OF THE FACTS

On October 28, 1977, the two minor children of Puntney, Charles Ray Puntney and Charles Roy Wesley Puntney, born January 20, 1970, and January 24, 1974, respectively, were removed from the care of Puntney and his wife. On November 14, 1977, the children were adjudicated dependent and neglected children under the law then in force,[1] and a permanent wardship was established. Jeanne Puntney later became and remains so far as the record discloses, comatose. On January 24, 1980, the attorney for the Lawrence County Department of Public Welfare filed its petition to terminate the parent-child relationship under Ind.Code 31–6–5–4 (Supp.1978), which was granted on June 18, 1980. As noted, the termination proceeding was conducted under the present law which became effective on October 1, 1979.

## ISSUES

Puntney assigns four errors for review which have been consolidated and restated as follows:

---

1. Ind.Code 31–3–1–7, since repealed.

I. That the children have not been adjudicated delinquent or in need of services as required by Ind.Code 31–6–5–3(6)(A); and there was no showing that the November 14, 1977, wardship judgment was a dispositional decree as contemplated by the statute;

II. That respondent Puntney has not been offered reasonable assistance in fulfilling his parental obligations since his wife became comatose; and

III. That the judgment was contrary to law.

## DISCUSSION AND DECISION

*Issue I. Child in need of services adjudication*

Ind.Code 31–6–5–3(6)(A) (Supp.1978) and Ind.Code 31–6–5–4(1) (Supp.1978) essentially provide that before a proceeding to involuntarily terminate a parent-child relationship can be initiated the child must have been adjudicated a delinquent or in need of services. Furthermore, the child must have been removed from the custody of the parent for six months following that adjudication under a "dispositional decree." Here, the children were removed from the care of their parents pursuant to a wardship proceeding, as it was then denominated under prior law, Ind.Code 31–3–1–7. A child in need of services petition was never filed under the present law, Ind.Code 31–6–4–10 (Supp.1978). Puntney contends that the proceeding is therefore defective. He further contends that the October 28, 1977, judgment of removal was not a "dispositional decree."

Acts 1978, P.L. No. 136, § 59, which revised the juvenile law of the state, provides, in pertinent part, that "this act does not apply to matters in which a court has entered a dispositional decree before October 1, 1979...." Two cases recently decided by this court are dispositive of this issue, *Myers v. Jennings County Department of Public Welfare,* (1981) Ind.App., 417 N.E.2d 926, and *In the Matter of Charles Damon*

*Miedl*, (1981) Ind.App., 416 N.E.2d 491 (transfer pending). Inferentially, they stand for the proposition that a judgment under wardship law existing prior to October 1, 1979, removing children from a parent is a dispositional decree of a child in need of services as set forth in Ind.Code 31–6–5–3(6)(A) and Ind.Code 31–6–5–4(1). A judgment which terminates the parent-child relationship pursuant to Ind.Code 31–6–5–4 predicated thereon is valid. The courts in the above-cited cases were faced with a situation, as here, where children, originally taken as wards under the old law, underwent termination proceedings pursuant to the new juvenile code. While the precise question before us now was neither raised nor argued in *Myers* and *Miedl*, the implications of their holdings were clear. That is, the termination proceedings under the new code may use the wardship proceeding under the old to satisfy the requirements of Ind.Code 31–6–5–3(6)(A) and Ind. Code 31–6–5–4(1).

*Issue II.  Offer of assistance for parental obligations*

Ind.Code 31–6–5–3(6)(C) and Ind.Code 31–6–5–4(3) contemplate that before proceedings to terminate can be initiated it must be shown that reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and the parent has failed to accept such services or they have been ineffective. Puntney argues that no reasonable assistance was offered to help him fulfill his parental obligations.

When reviewing a case in which the trial judge has rendered findings of fact, this court will not set aside the judgment unless it is clearly erroneous. We are limited to examining the evidence most favorable to the trial court's findings because it is impermissible to weigh the evidence or consider the witnesses' credibility, and if there is evidence of probative value, such findings are to be affirmed. *Bird v. Delaware Muncie Metropolitan Plan Commission*, (1981) Ind.App., 416 N.E.2d 482; Ind. Rules of Procedure, Trial Rule 52(A).

The evidence most favorable to the judgment discloses that the children were removed from the care of their parents in a wardship proceeding on October 28, 1977, for neglect, medical neglect, and failure of both parents to supervise the children. From the outset, caseworkers of the Welfare Department had offered Puntneys a contract which provided services of the homemaker, public health nurse, and food stamps. Caseworkers had made visits to the Puntneys' home. Puntney had refused to sign the contract. Mrs. Puntney became comatose in 1978, and so remains. A caseworker testified that on nine occasions he had approached Puntney, and on each occasion had requested of Puntney his address for the purpose of offering services. Puntney either had an excuse, made no reply, became belligerent, or otherwise steadfastly refused to disclose his place of residence. Eventually the caseworkers abandoned further attempts to offer services. Puntney controverted this testimony. He argues that they could have inquired of his attorney where he lived.

The trial court found that reasonable services had been offered to the parents to assist them in fulfilling their parental obligation and that they had failed to accept such services. Puntney owed some effort to accept assistance, and the evidence discloses that he made none. To the contrary, he was obstructive of efforts to assist him in fulfilling his parental obligations. We are of the opinion that the court's finding on the issue of services was supported by sufficient evidence.

*Issue III.  Judgment contrary to law*

Before the parent-child relationship can be terminated, Puntney argues that an intermediate standard of proof must be met which requires more than a preponderance, namely evidence that is clear, cogent, unequivocal or convincing. The evidence, Puntney contends, does not satisfy that intermediate standard. He cites two adoption cases which hold that clear, cogent and indubitable evidence must be shown in order to terminate parental rights. *In re Adoption of Anonymous*, (1973) 158 Ind. App. 238, 302 N.E.2d 507; *In Re Adoption of Bryant*, (1963) 134 Ind.App. 480, 189 N.E.2d 593.

■ Effective on October 1, 1979, the new juvenile code, under which these termination proceedings were tried, establishes a different standard of proof. Ind.Code 31–6–7–13(a) (Supp.1979) states:

"(a) A finding by a juvenile court that a child committed a delinquent act, or that an adult committed a crime, must be based upon proof beyond a reasonable doubt. *Any other finding must be based upon a preponderance of the evidence.*" (Emphasis added.)

Clearly, the standard of proof announced in *In Re Adoption of Bryant, supra,* and *In Re Adoption of Anonymous, supra,* was changed by the new statute. At trial, Puntney never challenged the constitutionality of the new code's standard of proof in a termination proceeding. Questions regarding the constitutionality of a statute must be raised in trial court before the filing of a motion to correct errors. *In Re Wardship of Bender,* (1976) 170 Ind.App. 274, 352 N.E.2d 797; *Linville v. The Shelby County Plan Commission,* (1972) 258 Ind. 467, 281 N.E.2d 884. There is a strong presumption favoring the constitutionality of an act of the legislature, and the power to declare a statute void is to be exercised with the utmost care, and after all doubts of constitutionality have been removed beyond a reasonable doubt. *State v. Clark,* (1966) 247 Ind. 490, 217 N.E.2d 588. He who raises the question of constitutionality must assume the burden of making the unconstitutionality clearly apparent. *Hanley v. State, Department of Conservation et al.,* (1954) 234 Ind. 326, 123 N.E.2d 452.

Puntney has cited no authority to demonstrate that the General Assembly cannot set the standard as a preponderance of the evidence. Our own research has disclosed none. This same argument to the standard of proof in a juvenile waiver hearing was made in *Imel v. State,* (1976) 168 Ind.App. 384, 342 N.E.2d 897. There, the court held that the burden of proof may be discharged by a preponderance of the evidence. The court pointed out that a waiver hearing was a civil proceeding. A termination proceeding is also a civil case, and ordinarily the

standard of proof is a preponderance of the evidence. It is true that in some cases, as in *In Re Adoption of Anonymous,* and *In Re Adoption of Bryant,* the courts have developed a higher, intermediate standard of proof. That rule does not appear to have a constitutional basis, but rather, seems to have been founded in the common law. Therefore, at the will of the legislature, it can be changed, as was done. We now proceed to the disposition of the sufficiency question. Ind.Code 31–6–5–4 provides the following criteria for the termination of the parent-child relationship:

"(1) the child has been removed from his parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in his removal will not be remedied;

(3) reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective;

(4) termination is in the best interests of the child; and

(5) the county department has a satisfactory plan for the care and treatment of the child."

■ We have heretofore determined the sufficiency of (1) and (3), and will omit them for this discussion. The evidence most favorable to the judgment discloses that the children were taken from the parents on October 28, 1977, whereupon a wardship was established. Subsequently, services were offered Puntneys through the homemaker, the health nurse, and the food stamp program. Caseworkers visited the home. A contract for further service was offered, and Puntney refused to sign it. In June 1978, Mrs. Puntney became and continues to be comatose. She is unable to accept services and is not a party to this appeal. Prior to trial, Puntney was unable to obtain suitable housing. During the three years since the children were taken from the parents, Puntney visited the elder child nine times and the younger child two times. He refused to disclose his address. Presently, the children are living in foster homes and doing exceptionally well. The

foster parents wish to adopt the oldest child, Charles Ray Puntney. The youngest child suffers from brain damage and is epileptic. The foster family has worked extremely hard with him. It was hoped that he, too, would be adopted by the foster parents, and they had so indicated an intent. Following visits by Puntney, the youngest child suffered behavioral problems, which included smearing feces on his arms and face, and so visitation rights were withdrawn. It was the opinion of the Welfare workers that it would be in the best interests of the children to terminate the parental rights.

We are of the opinion that the above evidence meets the requirements of Ind. Code 31–6–5–4(2), (4) and (5); and the findings by the court on each of those requirements has been substantially supported by the evidence.

For the above reasons, this cause is affirmed.

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.