**In the Matter of Termination of Parent-Child Relationship of Darla JONES, a Child and Rossie E. Jones, Jr., and Darlene Reed Jones, her parents,**

**Darlene Reed JONES and Rossie E. Jones, Jr., Respondents-Appellants,**

v.

**JACKSON COUNTY DEPARTMENT OF PUBLIC WELFARE,
Petitioner-Appellee.**

No. 1–281A54.

Court of Appeals of Indiana,
Fourth District.

June 24, 1982.

Susan A. Failey, Joanne Sawyer, Legal Services Organization of Indiana, Inc., Columbus, Stephen J. Moore, Legal Services Organization of Indiana, Inc., Bloomington, for respondents-appellants.

Jeffrey A. Nierman, Brownstown, for petitioner-appellee.

YOUNG, Judge.

In a Memorandum Decision handed down November 12, 1981, 433 N.E.2d 420, we remanded this case to the Jackson Circuit Court for findings necessary to our review. We determined that the trial court's findings were lacking on the relevant facts concerning provision of reasonable services to assist the parents in fulfilling their parental obligations. We also intimated a need for findings giving the reason for the child's removal and how the reason

causing removal was corrected.[1] We retained jurisdiction to complete our review after the trial court complied with directions in our opinion on remand. However, we believe it erred in its findings and conclusion that the Jackson County Department of Public Welfare offered or provided reasonable services designed to assist the parents in fulfilling their parental obligations.

The issues raised remain as follows:

1. Whether the trial court's judgment terminating the parent-child relationship between Darla Jones, a child, and Rossie E. Jones, Jr. and Darlene Reed Jones, her parents, is supported by the evidence, in that the evidence did not establish that the Jackson County Department of Public Welfare offered or provided respondents the services required by Ind.Code 31–6–5–4.

2. Whether the trial court's judgment is contrary to law in that its Conclusion of Law that the Department of Public Welfare offered or provided the Joneses reasonable services to assist them in fulfilling their parental obligations is not supported by the Findings of Fact entered by the trial court.

The trial court's original and additional findings are as follows:

The Court having heard the evidence and the arguments of counsel, having considered the same and being duly advised in the premises hereby finds as follows:

1. By order of this Court on September 27, 1974, Darla Jones was made a ward of the Jackson County Department of Public Welfare in Cause No. 74 J 71 and was removed from the home of her natural parents, the respondents herein, Rossie E. Jones, Jr. and Darlene Reed Jones.

2. Darla Jones since said date has continuously been out of the home of her natural parents and had no contact with her natural parents except for less than five (5) separate occasions when the parents visited Darla Jones each visitation session lasting less than three hours, except that visit scheduled for December 9, 1974.

3. No visitation or contact with Darla Jones has been had by the respondents since January of 1977.

4. A visitation was scheduled and held on December 9, 1974 which visitation resulted in Darla Jones being removed from the Jackson County Department of Public Welfare's control without the Department's consent and a refusal on the part of the respondents to return the custody of the child to the Department of Public Welfare. When said child was returned to the Department of Public Welfare with the assistance of law enforcement authorities the child was observed to be suffering from minor bruises and injuries.

5. From September 27, 1974 to the present, Mr. & Mrs. Jones maintained numerous residences in several counties living as a single family unit or living with other members of their respective families.

6. The current residence of the respondents consists of a one bedroom home with a kitchen, and bath which is occupied by Mr. & Mrs. Jones, their three year old child and their one year old child.

7. From September 27, 1974 to the present, Mr. Jones has had numerous jobs, was often times unemployed is currently unemployed and has been unemployed for approximately six months.

8. Jackson County Department of Public Welfare provided direction to the respondents directing them to provide a stable and secure living facility for Darla Jones, to obtain and maintain stable employment, to keep Jackson County Department of Public Welfare informed of

---

1. There must be at least some relationship between the reason for removal and the services required to be offered the parents to assist in fulfilling their parental obligations. *Compare* Ind.Code 31–3–1–7 (now repealed); *In re Dove*, (1977) 174 Ind.App. 464, 368 N.E.2d 6. It would be illogical to require the Department to aid in correction of unrelated matters in which the parents were having problems.

the respondents [sic] whereabouts and to take the necessary steps to remedy any problems Mr. Jones was having with the military service.

9. Respondents failed to secure and maintain a stable and adequate living facility for Darla Jones, failed to secure and maintain a stable gainful employment and failed to keep the Jackson County Department of Public Welfare knowledgeable of their whereabouts.

10. The Jackson County Department of Public Welfare, if termination of the parent child relationship is approved as requested, plans to place the child for adoption with the present foster parents who have had custody of the child since February, 1975. The foster father of said foster family is employed with Cummins Engine Company, the family has resided in its present location since 1962 and is ready and willing to immediately adopt Darla Jones.

## CONCLUSIONS OF LAW·

1. There is a reasonable probability that the condition that resulted in the removal of the child from her parents will not be remedied.

2. Reasonable services had been offered to the respondents to assist them in fulfilling their parental obligations toward the child which the parents have either failed to accept or which have not been effective.

3. The termination of the parent child relationship of Rossie E. Jones, Jr. and Darlene Reed Jones with respect to their child Darla Jones is in the best interests of the child.

4. The Jackson County Department of Public Welfare has a satisfactory plan for the care and treatment of Darla Jones should the parent child relationship be terminated as requested.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DE-CREED that the parent child relationship of Darla Jones, a child, and Rossie E. Jones, Jr. and Darlene Reed Jones, her parents, is hereby terminated.

## ADDITIONAL FINDINGS OF FACT

1. Following the removal of Darla Jones from the Joneses' home, the Jackson County Department of Public Welfare Director Cutts and Department of Public Welfare Caseworker Frische counseled with Rossie E. Jones, Jr. and Darlene Reed Jones jointly and individually on several occassions [sic] advising of the need for the Joneses to obtain a stable and suitable residence, advising Mr. Jones of the need for remedying his A. W. O. L. problem with the military service, advising Mr. Jones of the need to obtain and maintain gainful employment and advising the Joneses to at all times maintain contact with the Department of Public Welfare primarily for the purpose of keeping the Department advised of their whereabouts.

2. During the period of the wardship of Darla, Rossie E. Jones, Jr. obtained employment and was employed by no less than five different employers, he performed odd jobs for individuals and has had periods of unemployment.

3. During the period of the wardship, Mr. & Mrs. Jones frequently moved and maintained residences, at least eleven, within and without of Jackson County and at all times failed to communicate with the Department of Public Welfare regarding these moves and their location.

4. The most recent Department of Public Welfare Caseworker, assigned to Darla Jones [sic] case, Denise Melloncamp, had no contact with Mr. & Mrs. Jones since beginning as a Child Welfare Caseworker in October of 1978 because she had no knowledge of the whereabouts of Mr. & Mrs. Jones and Mr. & Mrs. Jones had initiated no contact with the Department. Various attempts were made to locate the Joneses but were to no avail. Service of process sufficient to commence these termination proceedings was only made possible upon Caseworker Melloncamp's chance discovery of the Joneses address from one of their acquaintances.

5. Prior to 1977, the Department of Public Welfare assisted Mrs. Jones in paying for certain of her medical bills and provided Mr. & Mrs. Jones with food stamps for a short period of time.

6. Prior to 1977, the Department of Public Welfare had no parent aid skills instruction available within their Department other than through its homemaker. The Department did refer Mr. & Mrs. Jones to Quinco Consulting Center for the purpose of obtaining parent aid skills training, and also provided homemaker services, including hints and guidance relative to cleaning, organizing and maintaining a household and general child care and caseworker visits to Mr. & Mrs. Jones.

7. Prior to 1977, the Department of Public Welfare attempted to maintain contact with Mr. & Mrs. Jones but because of their frequent moves it was difficult to keep up with Darla's parents and provide constant services.

8. Following the period of continued residence changes and failure of Mr. & Mrs. Jones to obtain steady gainful employment and failure to keep the Department of Public Welfare advised of their whereabouts, the Department of Public Welfare abandoned further assistance and offers for assistance to the Joneses in 1977.

9. In 1977 Mr. & Mrs. Jones were advised by the Department of Public Welfare that termination of their parental rights was in process or would be commenced and that further visitations with the child would not be possible. No contact was made by Mr. & Mrs. Jones with the Department of Public Welfare from the time of this representation made by the Department to the present.

10. Reasonable services were offered and provided by the Department of Public Welfare to Mr. & Mrs. Jones when examined in connection with the ability of Mr. Jones to seek and obtain gainful employment, the ability of Mr. & Mrs. Jones to seek and obtain housing, the failure of the Joneses to keep in contact with the Department of Public Welfare regarding their whereabouts and the service resources available to Jackson County Department of Public Welfare to assist the Joneses.

We are still unsure of exactly why the child was removed from the Joneses in the first place. It appears from evidence in the record that Darla was removed because of bruises on her body. There is no evidence and no finding on such. Presumably the problems the Department sought to have remedied might also be inferred to have contributed to the removal.

◼ The parents contend that reasonable services designed to help them overcome the problems which led to the wardship of Darla were not offered or provided. Thus, the argument is that the evidence did not support the finding of the trial court and the findings then failed to support the conclusions and judgment.[2] The Department argued that in light of the circumstances in this case reasonable services were offered and provided and these were ineffective or rejected.[3]

Ind.Code 31‑6‑5‑4 establishes the statutory procedure for involuntary termination of parental rights and provides as follows:

A Petition to terminate the parent-child relationship involving a delinquent child or a child in need of services may be

---

2. We note the United States Supreme Court case of *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) requires a clear and convincing standard of proof in parental rights termination cases to satisfy the due process clause of the Fourteenth Amendment. We will review the evidence to determine if under that standard it could support the findings. *Ellis v. Knox County Department of Public Welfare,* (1982) Ind.App., 433 N.E.2d 847.

3. After remand the Department filed no briefs, arguments or petitions. We will presume their contentions are the same. However, we will view the evidence in a manner most favorable to the trial court's judgment and reversal will ensue only if error is demonstrated by the record and appellant's brief. *Day v. West,* (1978) Ind.App., 373 N.E.2d 935.

signed and filed with the juvenile court only by the attorney for the county department or the prosecutor; that person shall represent the interests of the state in all subsequent proceedings on the petition. The petition shall be entitled "In the Matter of the Termination of the Parent-Child Relationship of _____, a child, and _____, his parent (or parents)" and must allege that:

(1) the child has been removed from his parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in his removal will not be remedied;

(3) reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective;

(4) termination is in the best interests of the child; and

(5) the county department has a satisfactory plan for the care and treatment of the child.

To resolve the issues of this appeal, we must first determine if there is evidence to support the findings which in turn would satisfy Ind.Code 31-6-5-4(3). We hold the evidence does not support the findings.

Several principles of juvenile law are involved when parental rights are terminated. One of the policies set forth in the Juvenile Code is "to strengthen family life by assisting parents to fulfill their parental obligations ...." Ind.Code 31-6-1-1(5). Of course, a child is to be removed from its family "only when it is in the child's best interest." Ind.Code 31-6-1-1(6).

Several cases have discussed and considered the section requiring the offering of "reasonable services to assist the parent in fulfilling the parental obligations". *In re Leckrone*, (1980) Ind.App., 413 N.E.2d 977 involved Ind.Code 31-3-1-7(e) (now repealed).[4] The parent in *Leckrone* challenged the adequacy of the finding and supporting evidence that reasonable services had been provided the parent which services were designed to help in overcoming the problems which originally led to the deprivation of custody. The court construing the statute and citing *In re Dove*, (1977) 174 Ind.App. 464, 368 N.E.2d 6, stated "[T]he agency responsible for the child's welfare has a duty to encourage the parent to overcome the problem which led to the deprivation of custody ...." The reason for the initial placement in a foster home in *Leckrone* was their eviction from a rental house. The trial court then made the children wards of the Department based upon unsanitary living conditions and a lack of

4. Ind.Code 31-3-1-7(e) provided:

petition for termination of parental rights made in connection with or before an adoption proceeding may be filed by the following:

(1) either parent when termination of a parent-child relationship is sought with respect to the other parent; or

(2) the guardian of the person, the legal custodian, or the person standing in parental relationship to the child; or

(3) a licensed child placement agency or county department of public welfare; or

(4) any other person having a legitimate interest in the matter.

The petition shall be filed before adoption proceedings are instituted, unless the court in its discretion, allows a petition to be filed during the adoption proceedings. When the petition is filed the adoption of the child need not be immediately contemplated, and the purpose of the petition may be to facilitate adoption when adoptive opportunities arise.

After a petition has been filed, the court shall require notice of the hearing to be given to the petitioner, the parents of the child, the guardian of the person of the child, the person having legal custody of the child, and, in the discretion of the court, a person appointed to represent any party.

At the hearing on termination of parental rights, the person filling [sic] the petition shall show that reasonable services have, under he [sic] circumstances, been provided to the parents or were offered and refused by the parents, which services were designed to aid the parents in overcoming the problems which originally led to the deprivation of physical custody. The effectiveness, if any, of the services, and that, despite the offer or utilization of the services, the problems which originally led to the deprivation of physical custody are still present must also be shown.

alternative housing. The Department tried to assist the parent with the problems that led to the loss of custody by the following means: helped obtain an FHA loan commitment, contacted realtors, located possible homes, provided a variety of support services (furniture, food stamps, ADC, transportation services, homemaker services), and intensive case work. The parent did not choose to use them. 413 N.E.2d at 980. By providing this assistance the Department did actively assist and offer reasonable services within § 7(e) to help the parent overcome the original problem.

Another case, *In re Fries*, (1981) Ind.App., 416 N.E.2d 908, was decided under the current statute, Ind.Code 31–6–5–4. The parent argued that the criteria for termination of parental rights of this statute had not been met, in particular § 4(3), the assistance in fulfilling parental obligations. The Department scheduled a meeting with the parent which the parent failed to attend, attempted unsuccessfully to locate the residence of the parent and attempted to have another meeting with the parent. The Court of Appeals held that the Department cannot offer or provide services if the parent refuses to attend meetings and will not inform the Department of a change in residence. The Department in this case "did all it could reasonably be expected to do under the circumstances." 416 N.E.2d at 910. Where the parent refuses to cooperate, attend meetings and inform the Department of its residence and the Department attempts to assist, such conduct is a refusal of the services.

Another recent case applying Ind.Code 31–6–5–4(3) is *In re Myers*, (1981) Ind.App., 417 N.E.2d 926 (*Myers* relies upon the Court of Appeals' opinion of *In re Miedl*, (1981) Ind.App., 416 N.E.2d 491 in which transfer was granted in *In re Miedl*, (1981) Ind., 425 N.E.2d 137). In *Myers*, the parent challenged, *inter alia*, the existence of provision of reasonable services by the Department. The Department referred the parent to a counselor at Quinco, a mothering class was provided and the Department entered a "contract" which encouraged the parent to engage in a program of rehabilitation. The

caseworker did inform the parent what was expected of her and did offer their services. 417 N.E.2d at 931. The court stated that

[T]he question of what constitutes "reasonable services" is one which cannot be answered by a definitive statement. Instead, it must be answered on the basis of any given factual situation, for it is clear that services which might be reasonable in one set of circumstances would not be reasonable in a different set of circumstances.

*Id.* The evidence did show reasonable services were provided.

One final case relevant to the determination of what are sufficient reasonable services to assist a parent in fulfilling the parental obligations is *In re Puntney*, (1981) Ind.App., 420 N.E.2d 1283. Again, the parents contended that the Department did not offer reasonable assistance. The Department offered a "contract" to the parents which provided the services of homemaker, public health nurse and food stamps as well as caseworker visits to the home. Services were offered and refused several times, after which the Department abandoned the offers. *Id.* at 1285. The trial court found reasonable services had been offered and refused. The Court of Appeals held the trial court's finding was correct stating the parent owed some effort to accept assistance.

■ In order to affirm we must determine either reasonable services were offered and refused or that the services failed to remedy the problem which led to deprivation of custody.

In our case, there is evidence to support the finding that the Department outlined what needed to be corrected in order to have the child returned. However, merely informing the Joneses of what was to be corrected for the return of Darla, does not rise to the level of providing reasonable services required by § 4(3). Frequently changing residences and employment is not a finding related to provision of reasonable services. In fact they are areas where services should have been offered. In *Leck-*

*rone*, the Department assisted the parent in finding stable residence and the Department was rejected. Paying certain medical bills and the provision of food stamps for a short period would be services relevant to aiding the parents. However, the evidence demonstrates the only medical services were those provided to Darla immediately after she was removed from the Joneses. The Department also provided food stamps, but only after requested by the Joneses. While the paying of medical bills and food stamps would be reasonable services, here they were not offered in a manner designed to aid the parents in their duties as parents. The evidence of a referral of Jones to Quinco was less than clear or convincing. Statements such as "I believe I did" or "maybe a caseworker did" are not sufficient to prove reasonable services were offered. *Compare Palace Bar, Inc. v. Fearnot*, (1978) 269 Ind. 405, 381 N.E.2d 858 (probative value of testimony regarding inferences must be drawn from facts). The only evidence about the actual homemaker visit was produced by Joneses. The visit amounted to a short discussion outside the home. The inability of the Department to keep in contact with Joneses is at least in part a result of their inability to find work or adequate housing and the failure of the Department to help with housing and employment. There are no findings or evidence that Jones failed to keep appointments or refused services actually tendered as in *Fries* and *Puntney*.

These minimal offerings by the Department are not reasonable when compared with *Leckrone*. The evidence to support the provision of services was not clear and convincing. The Department did not make reasonable attempts to keep in touch with the Joneses. The Joneses failure to keep in touch with the Department could not amount to a refusal of services where services were virtually non-existent. *Compare Fries, Puntney*. The evidence does not disclose that any reasonable aid was offered. Only directions were given to Joneses to solve their own problems. The burden was on the Department to show by clear and convincing evidence that termination of pa-

rental rights was proper. Because of the value society places upon the family, it should not be disbanded absent an adequate showing that the safeguards of the Legislature for such termination have been met. We reverse the decision terminating the parental rights.

Reversed.

MILLER, P. J., and ROBERTSON, J. (Sitting by designation), concur.