IN THE MATTER OF THE ADOPTION OF STEPHEN ANTHONY LOCKMONDY, JOSEPH T. LOCKMONDY *v.* DEAN R. JESTER

[No. 3-874A139. Filed March 24, 1976.]

564

*Edward C. Hilgendorf,* of South Bend, for appellant.

*Myron J. Hack, David T. Ready,* of South Bend, for appellee.

STATON, P.J.—Dean R. Jester filed a petition to adopt twelve-year-old Stephen Anthony Lockmondy on September 20, 1973. He had been married to Stephen's natural mother, Frances Jester, for about nine years prior to filing the petition. She gave her consent to the adoption, but Stephen's natural father, Joseph T. Lockmondy, refused his consent. Later, October 11, 1973, Frances Jester died from injuries received in an automobile-train collision.

On January 28, 1974, the trial court granted the adoption without Lockmondy's consent.[1] After overruling Lockmondy's motion to correct errors, the trial court amended its decree:

---

1. The original decree read, in part, as follows:

"The Court finds that the material allegations of the Petition for Adoption have been proved, that Joseph T. Lockmondy, the natural father of the subject minor child, Stephen Anthony Lockmondy, aban-

"The Court finds that the material allegations of the Petition for Adoption have been proved, that the consent of Joseph T. Lockmondy, the natural father of the subject minor child, Stephen Anthony Lockmondy, is dispensed with upon the statutory grounds that for more than twelve (12) continuous months immediately prior to September 20, 1973 Joseph T. Lockmondy, while under a legal obligation to do so, failed to provide for the support and maintenance of Stephen Anthony Lockmondy although he was at all such times able to do so; and the Court further finds that it would be in the best interest and welfare of said minor child that the Petition for Adoption be granted."

Lockmondy timely filed a second motion to correct errors. His appeal raises two issues for review:

"Issue One: Did the trial court err in allowing a Department of Public Welfare social worker to state, over objection, his opinion as to whether or not it would be in the best interests of the child if the adoption were granted?

"Issue Two: Did the trial court err in granting the adoption against the manifest weight of the evidence?"

We affirm.

## I.

### Opinion Testimony

Marlin Kinman, a social worker with the St. Joseph County Department of Public Welfare, gave the trial court his opinion on whether the granting of the adoption would be in the best interests of Stephen:

"My opinion based on the information given me and through my contacts with the child is, provided such information is true, that it would be in the best interests of the child to remain in that home [the Jester home on a permanent basis]."

On appeal, Lockmondy contends that Kinman's testimony from memory as to his investigation and recommendation

doned him by failing for more than six (6) continuous months immediately prior to September 20, 1973 to provide for his support and maintenance though he was at all such times able to do so, and that it would be in the best interest and welfare of said minor child that the Petition for Adoption be granted. . . ."

served indirectly to place in evidence his report, which is inadmissible in an adversary adoption proceeding.[2]

Prior to rendering his opinion, Kinman testified as to his extensive educational, practical, and professional experience in social work and adoption investigations.[3] He also told the court who he did and did not talk to in the course of his investigation of the Lockmondy case, and the court received his testimony as expert testimony.[4] The determination of whether a tendered witness is qualified to give an opinion as an expert is a matter lying within the sound discretion of the trial court. *State* v. *Vaughan* (1962), 243 Ind. 221, 184 N.E.2d 143; *Dougherty* v. *State* (1934), 206 Ind. 678, 191 N.E. 84; *Fischer* v. *State* (1975), 160 Ind. App. 641, 312 N.E.2d 904. Lockmondy does not contend that the trial court abused its discretion when it permitted Kinman to testify as to his expert opinion, and we conclude that his qualifications were sufficiently established to justify the trial court's conclusion as to his expert status.

The thrust of Lockmondy's argument on appeal is that Kinman's opinion testimony served indirectly to place in evidence the inadmissible welfare report. Although Kinman testified that he had submitted such a report, there is no suggestion that the trial court saw or

---

2. *Attkisson* v. *Usrey* (1946), 224 Ind. 155, 65 N.E.2d 489; *In re Adoption of Sigman* (1974), 159 Ind. App. 618, 308 N.E.2d 716; *Jeralds* v. *Matusz* (1972), 152 Ind. App. 538, 284 N.E.2d 99; *In re Adoption of Chaney* (1958), 128 Ind. App. 603, 150 N.E.2d 754.

3. Kinman acquired a Bachelor's Degree in English and History in 1946, a Master's Degree in English in 1949, and a Master's Degree in Social Work in 1961, all from Indiana University. Prior to 1956, he was a school teacher for a brief period. From 1956 until the time of trial, he had been employed as a social worker by the St. Joseph County Department of Public Welfare and, during the course of his employment, was responsible for approximately thirteen hundred (1300) pre-adoption hearing investigations.

4. The trial court responded as follows to Lockmondy's objection to the question seeking to elicit Kinman's opinion:

"THE COURT. I think the law permits the Court to admit expert testimony in a situation of this kind. As Counsel indicates, it certainly is not binding. The Court in its omniscience should know these things but unfortunately we don't, so I am going to overrule your objection again, Mr. Hilgendorf, and permit the witness to answer the question."

considered any part of this report. The reason given for the exclusion of such reports in adversary adoption proceedings is that:

> "The report . . . might well include 'gossip, bias, prejudice, trends of hostile neighborhood feelings, the hopes and fears of social workers,' as well as hearsay and opinion." *Attkisson* v. *Usrey* (1946), 224 Ind. 155, 161, 65 N.E.2d 489, 491, *quoting from People* v. *Lewis* (1932), 260 N.Y. 171, 183 N.E. 353, 355.

Although a written welfare report is objectionable for these above reasons, an expert's opinion is not necessarily rendered inadmissible because it is based in part on some of the same details contained in the report. The factual basis for the expert opinion as well as the expert's qualifications are subject to rigorous cross-examination. Kinman's expert opinion was independent of the welfare report. Any direct reference to the content of the report would have been improper.

Not every social worker may qualify as an expert to render an opinion on an adoption. Training and experience are more important to qualifying as an expert than a mere familiarity with the environmental and cultural circumstances of the case. Furthermore, an expert opinion may be objectionable if it is based upon hearsay not customarily relied upon in the practice of the expert's profession or because it is based upon hearsay information not "normally found reliable." See *Rosenbalm* v. *Winski* (1975), 165 Ind. App. 378, 332 N.E.2d 249, 252, and cases there cited. When an opinion is based upon such hearsay information, a proper hearsay objection must be made to preserve error.[5]

We conclude that Kinman's expert opinion testimony did not serve indirectly to place in evidence an inadmissible welfare report. His opinion testimony was clearly relevant to the question of the best interests of Stephen. Further, an opinion of an expert witness

---

5. In the present case, no hearsay objection was made either at trial or on appeal.

on an ultimate fact in issue is not objectionable for the reason that it invades the province of the trier of fact. *DeVaney* v. *State* (1972), 259 Ind. 483, 288 N.E.2d 732.

We conclude that Lockmondy's allegations of error in the admission of Kinman's opinion testimony are without merit.

## II.

### Sufficiency of the Evidence

In his brief, Lockmondy contends that the trial court erred in granting the adoption "against the manifest weight of the evidence." In the argument portion of his brief, and in his motion to correct errors, Lockmondy specifically attacks only the trial court's finding that he failed to provide for the care and support of Stephen. Thus, we will limit our review to a consideration of whether there is sufficient evidence to support this finding, since all other allegations of error have been waived for failure to include them in the motion to correct errors or in the argument portion of appellant's brief. Indiana Rule of Procedure, AP. 8.3(A)(7); *Ruggirello* v. *State* (1969), 252 Ind. 144, 246 N.E.2d 481.

Before reviewing the sufficiency of the evidence, it is important that we explain the standard of appellate review to be applied in a case of this posture. Lockmondy challenges the sufficiency of the evidence to support the trial court's special finding of fact.[6] Indiana Rule of Procedure, Trial Rule 52(A), provides:

---

6. Special findings were not requested by the parties in this case. However, Trial Rule 52(A) allows the trial court to make special findings upon its own motion. A general finding is "a finding in favor of one party and against the other." *Hunter* v. *Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448, 458. A special finding "contains all the facts necessary for recovery by the party in whose favor the conclusions of law are found and should contain a statement of the ultimate facts from which the trial court determines the legal rights of the parties to the action." *Id.* The trial court may make special findings on less than all the issues, and, in such case, a general finding is determinative as to the remaining issues. TR. 52(D); *Hunter* v. *Milhous, supra.* In the present case, the trial court specially found that Lockmondy failed to

> "[T]he court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

The clearly erroneous standard of review as applied by the federal courts under Federal Rule of Civil Procedure 52(a) is a broader review of the sufficiency of the evidence than that applied to federal jury verdicts. *Case* v. *Morrisette* (D.C. Cir. 1973), 155 U.S.App.D.C. 31, 475 F.2d 1300, 1306, n.28. See also C. WRIGHT & A. MILLER, 9 FEDERAL PRACTICE AND PROCEDURE §§ 2571, 2585 (1971). The frequently cited federal definition[7] of clearly erroneous was announced by the United States Supreme Court in *United States* v. *United States Gypsum Co.* (1948), 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Under the federal rule, the court must make special findings "[i]n all actions tried upon the facts without a jury or with an advisory jury." Under the Indiana rule, the trial court is generally not required to make special findings in the absence of a request.

In Indiana, the reviewing court does not weigh the evidence or consider the credibility of witnesses. The standard of review is the same whether the facts are determined by a jury or a court without a request for special findings. Indiana reviewing courts look only to the evidence and reasonable inferences in support of the

provide for the care and support of Stephen for more than twelve continuous months. There is no special finding that this failure was wilfull, but the court's general finding that the adoption should be granted governs the resolution of this issue.

7. Although Indiana appellate courts will frequently look to decisions under the federal rules as aids to interpreting the corresponding Indiana rules, these federal court interpretations are not binding on the Indiana courts. *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 522, 284 N.E.2d 834, 848.

judgment. The federal clearly erroneous standard would require Indiana courts to apply a stricter standard of review in some court trials than in others. In cases tried by the court where special findings were made, an Indiana reviewing court would be required to reverse when, "on the entire evidence . . . [we were] left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co., supra,* 333 U.S. at 395, 68 S. Ct. at 542, 92 L. Ed. 746. This kind of review was not intended by the drafters of the Indiana rule:

> "On appeal the standard for reviewing the evidence with respect to claims tried without a jury or with an advisory jury is different than the standard governing the trial court in amending findings or correcting errors. *It is the same standard as governs review of the evidence in a case tried by jury, i.e.,* a finding upon an issue in favor of a party with the burden of proof will be reversed if there is no reasonable evidence to support it. . . ." Civil Code Study Commission Comments to TR. 52(A) (our emphasis).

Our interpretation that clearly erroneous under TR. 52(A) does not change the usual rules of appellate review for sufficiency of the evidence is bolstered by Indiana Rule of Procedure, Appellate Rule 15(M), which provides in part:

> "A verdict, finding, judgment, order or decision shall be reversed upon appeal as not supported by or as contrary to the evidence only when clearly erroneous, and due regard shall be given to the opportunity of the finder of fact to judge the credibility of the witnesses."

Further, this Court has applied the usual rules of appellate review for sufficiency of the evidence in determining the sufficiency of the evidence to support special findings of fact. See *In re Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490; *Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119; *First Nat'l Bank* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E.2d 563.

The Indiana clearly erroneous standard of review of the

sufficiency of the evidence to support special findings of fact does not require a standard of review different from that applied when findings of fact are not specially made. However, a different standard of review is required where an adoption is granted without consent.

In *Horlock* v. *Oglesby* (1967), 249 Ind. 251, 260, 231 N.E. 2d 810, 815, the Indiana Supreme Court discussed the standard of review applicable in reviewing the sufficiency of the evidence to support the grant of an adoption without consent:

"It is not the province of appellate courts to weigh evidence. We will consider only the evidence most favorable to the appellee together with any reasonable inferences which may be drawn therefrom to determine whether the decision is sustained by sufficient evidence *within the standard of proof required by law. . . .*" (our emphasis).

The standard of proof required by law is "clear, cogent and indubitable evidence." *In re Adoption of Bryant* (1963), 134 Ind. App. 480, 494, 189 N.E.2d 593, 600. Therefore, considering the evidence most favorable to Jester, we must affirm if the evidence clearly, cogently, and indubitably establishes one of the statutory criteria for granting an adoption without consent.

IC 1971, 31-3-1-6(g) (Burns Code Ed.), at the time of these proceedings, provided:

"Consent to adoption is not required of:
(1) a parent or parents if the child is adjudged to have been abandoned or deserted for six [6] months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one [1] year he fails without justifiable cause, to communicate significantly with the child when able to do so or he wilfully fails to provide for the care and support of the child when able to do so as required by law or judicial decree; . . ."

In the present case, we conclude that there is clear and cogent evidence to support a finding that Lockmondy, while

able to do so, wilfully failed to provide for the care and support of Stephen for the twelve-month period immediately preceding the adoption petition. Lockmondy was required by a 1964 court order to pay $15.00 per week through the court for the support of Stephen, but he paid no support through the court after the early part of 1970. There is ample evidence that Lockmondy was employed and able to pay the required support payments, and Lockmondy makes no contention that his ability to pay was not proven.

Lockmondy attempted to explain his failure to provide support. He testified that, in early 1970, he and Frances Jester reached an oral agreement whereby he was to discontinue payments through the court, to "stay out of the picture," and to provide money for Frances through his mother, Gurina Lockmondy, when Frances needed it.[8] Gurina Lockmondy confirmed the fact of the out-of-court agreement and testified that, between 1970 and September 1973, she provided money for Frances, as well as clothing, drums, ice skates, a fishing rod, and a radio for Stephen. She testified that, when she gave money or substantial items to Frances or Stephen, she would look to her son for reimbursement.

Jester testified that he knew of no out-of-court agreement, that after 1970 Frances received no cash from Lockmondy for the support of Stephen, and that other items, including some clothing and toys, were explained to him as gifts from Stephen's grandmother, Gurina Lockmondy.

We may not weigh the evidence or judge the credibility of the witnesses. There is no apparent contradiction in the evidence given by Lockmondy and by Jester, since Jester would not be expected to know of an out-of-court agreement entered into without his knowledge. Still, we can not substi-

---

8. The reason for the agreement was that Jester was gambling with the money from the court and Frances did not want him to know that any money was being received from the Lockmondys. Jester denied that he ever gambled with the money.

tute our assessment of credibility for the trial court's. Nor may we substitute our judgment for the judgment made by the trial court. The trial court may not have believed that there was an out-of-court agreement between the deceased Frances Jester and Joseph Lockmondy. From the evidence presented, the trial court could have concluded that Lockmondy provided no support for Stephen, while Lockmondy's mother, on her own behalf, gave Stephen money and gifts which in no way discharged Lockmondy's support obligation.

Since the evidence and the reasonable inferences therefrom in the light most favorable to the judgment of the trial court establish clearly and cogently that Lockmondy failed to provide for the care and support of Stephen for the one-year period immediately preceding the adoption petition, the necessity of Lockmondy's consent to adoption was properly dispensed with on the statutory grounds.

We affirm.

Hoffman, J., concurs; Garrard, J. concurs in result.

NOTE.—Reported at 343 N.E.2d 793.