Claude R. RICHARDSON and Elma Richardson, his wife, Plaintiffs-Appellants,

v.

CITIZENS GAS & COKE UTILITY, A Utility District and an Instrumentality of the City of Indianapolis, Indiana; the Board of Directors for Utilities of the City of Indianapolis, d/b/a Citizens Gas & Coke Utility; Citizens By-Products Coal Company, a West Virginia Corporation, Defendants-Appellees.

No. 2–877A342.

Court of Appeals of Indiana, Fourth District.

June 30, 1981.

David Rogers, Rogers, McDonald & Grodner, Bloomington, for plaintiffs-appellants.

James R. McClarnon, Robert S. Hulett, Smith, Morgan & Ryan, Harry V. Huffman, Indianapolis, for defendants-appellees.

MILLER, Judge.

Plaintiff-appellants, Claude and Elma Richardson appeal from the summary and final judgments entered in favor of the defendant-appellees, Citizens Gas & Coke Utility, the Board of Directors for Utilities of the City of Indianapolis and Citizens By-Products Coal Company (collectively referred to as Citizens), on the Richardsons' amended complaint claiming an inverse condemnation under Indiana's eminent domain law [1] by Citizens. The Richardsons' amended complaint was premised upon an alleged improper seizure of their right to coal and other minerals, as conveyed to Claude Richardson by deed in 1933, located under real estate situated in section ten, Township 7 North, Range 7 West in Green County, Indiana (Section 10). The Richardsons alleged Citizens committed a compensible taking of their: 1) coal and mineral interests (which were unmined but were in place); 2) oil and gas already mined; and 3) underground gas storage rights. Citizens denied these claims in its answer and raised several affirmative defenses the gist of which asserted the Richardsons owned only the coal interests while Citizens possessed title to the oil, gas and underground gas storage rights by virtue of leases and assignments of leases executed by the surface owners of Section 10. Finally, Citizens argued Indiana law vested ways of necessity [2] in the natural gas storage lessee through the Richardsons' coal and such easements did not constitute a compensible taking.

Additional to its answer, on February 28, 1977 Citizens filed their "Objections to Appointment of Appraisers, Raising Matters Requiring Dismissal or Transfer and Warranting Entry of Judgment for Defendants." The basis of Citizens' objections was the phrase in the 1933 deed conveying only "coal and other minerals" to Claude Richardson. Citizens argued this phrase included only coal and *hard* minerals and, as a matter of law, did not convey title to oil, gas or underground gas storage rights. Citizens' also filed its summary judgment motion, as an alternative to its Objections, focusing on three issues:

1) Who owned title to the gas and oil exploration rights as well as the gas storage rights?

2) Were gas storage and coal mining compatible in the same fields at different levels?

3) Did easements in gross exist allowing Citizens to remove gas through the Richardsons' coal fields and, if they did exist, did they constitute a compensible taking of the Richardsons' coal interest?

In its summary treatment of this cause the trial court ruled on each of the above issues at three separate hearings. At the first hearing on March 8, 1977, the Richardsons responded to Citizens' objections and sought a partial summary judgment in their favor on the ownership of the oil, gas and gas storage rights issue. The same day the trial court entered a partial summary judgment in favor of Citizens on this issue. (Richardsons' Motion to Correct Errors seeking reversal of this ruling was denied on May 31, 1977.)

1. Ind.Code 32–11–4–5.

2. The trial court utilized and both sides employ the phrase "way of necessity" to describe an "easement in gross." We will use the latter phrase and note that Citizens claimed three easements through the Richardsons' coal since it drilled three wells down to its gas storage area.

The next hearing, an evidentiary one, was held on June 1, 1977 to determine if coal mining and gas storage were compatible and, therefore, implicitly to decide whether oil and gas easements could exist. After refusing to admit the testimony of one of the Richardsons' two expert witnesses on this issue and, then considering the testimony of Citizens' compatibility expert, the trial court ruled the two endeavors compatible but did not explicitly hold that Citizens possessed easements through the Richardsons' coal fields.

The final argument was held in the case on June 24, 1977 after which the trial court reaffirmed its earlier rulings and finally adjudged that a compensible taking by Citizens of the Richardsons' coal interest had not occurred.

The Richardsons filed a second Motion to Correct Errors stemming from the last two hearings which was denied. The Richardsons properly perfected a consolidated appeal from the partial summary and final judgments raising for this Court's consideration the following issues:

1) Did the March 8, 1977 partial summary judgment violate the requirement of Ind. Rules of Procedure, Trial Rule 56(C) that a Motion for Summary Judgment be served on the opposing party *no less than ten days* prior to a hearing on the motion since only eight days elapsed between service of, and the hearing on, Citizens' motion?

2) Was the partial summary judgment on the ownership issue contrary to law since a genuine issue of a material fact remained concerning the construction of the phrase "coal and other minerals" contained .in the 1933 deed to Claude Richardson?

3) At the June 1, 1977 hearing on the question of the compatibility of coal mining and gas storage did the trial court abuse its discretion by prohibiting testimony of one of the Richardsons' two expert witnesses on the issue when the Richardsons failed to establish his qualifications as an expert on this issue?

4) Was the June 1, 1977 decision that Citizens possessed easements in gross through the Richardsons' coal fields supported by sufficient evidence?

5) Was the decision that Citizens' easements in gross measured 300 feet in diameter contrary to law?

6) Was the June 24, 1977 decision that Citizens' easements in gross did not constitute a compensible taking contrary to law since such a conclusion required a factual determination by a jury?

7) Was the June 24, 1977 final judgment contrary to law since the trial court failed to make a finding of the absence of any genuine issues of any material fact?

8) Was the final judgment contrary to law due to the trial court's failure to specify the particular reasons for granting such judgment?

For the reasons stated below, we affirm both the partial summary and final judgments.

## FACTS

The material facts, as revealed from exhibits, affidavits and sworn testimony, do not appear to be disputed and reveal the following. The mineral rights in question were initially severed from the surface land through a series of deeds dated from 1899 to 1905. Ten of the thirteen original severance deeds conveyed "coal and other minerals" while two of the original severance deeds transfered only "coal." The remaining deed passed rights to "coal, clays, minerals and mineral substances." These original severance deeds were purchased by three grantees: 1) the Black Creek Semi-Block Coal Company; 2) the North Linton Coal Company; and 3) Livingston T. Dickason. Significantly, these three grantees did not explore for, nor sell, gas or oil. In fact the articles of incorporation of the two corporations did not authorize exploration or development of gas or oil properties. Similarly, historical evidence submitted to the court evinced that Dickason dealt only in coal property. Finally, historical documents demonstrated that prior to and during the period of the severance of mineral rights from surface rights, neither gas nor oil were discovered in Greene County. Rather,

the earliest instrument specifically designating gas and oil fields in Greene County was not recorded until 1907.

Eventually, the United Fourth Vein Coal Company (United Coal Company) purchased the mineral rights in Section 10 conveyed by the 13 original severance deeds. United Coal Company became bankrupt in 1933 with the Marion County Probate Court supervising the attendant receivership. Through its Receiver, George D. Yeazel, the United Coal Company published a notice of sale of its coal and mineral rights in Section 10 along with the right to mine and remove the same. Claude Richardson bid for these rights and, pursuant to an order of the Probate Court, Yeazel executed a deed to Richardson (dated May 19, 1933) conveying to him "the right, title and interest of [the United Coal Company] . . . in and to the *unmined coal* owned by [the United Coal Company] underlying [Section 10]." (Emphasis added.) Subsequently, Yeazel discovered the Company did not own the entire tract conveyed to Richardson. As a substitute for the portion the United Coal Company could not convey, Richardson agreed to accept from Yeazel a conveyance of "all the right, title and interest of the [United Coal Company] and the [R]eceiver in and to the *coal and minerals* lying in and under [Section 10] . . . by way of adjustment and settlement of the matter." (Emphasis added.) The subsequent deed (dated October 31, 1933), making this adjustment, conveyed to Richardson:

"all of the right, title and interest of the grantor and of the United Fourth Vein Coal Co. an Indiana corporation in and to the *coal and minerals* lying in under the north half of the southwest quarter, the southwest quarter of the northeast quarter and the northwest quarter of the southeast quarter, all in Section 10 . . . together with all rights and privileges in connection therewith now vested in the grantor or vested in the said United Fourth Vein Coal Co." (Emphasis added.)

Neither the original severance deeds nor either of Richardsons' two deeds defined "coal," "coal and other minerals" or "coal,

clays, minerals and mineral substances." Significantly, Richardson did not explore for oil and gas until 1943 when he executed a gas and oil lease with Sun Oil Co. Actual discovery of natural gas, pursuant to this lease, did not occur until 1947. However, due to a lack of interest in gas, Sun Oil capped the well and released Richardson from the lease in 1948. Richardson did not mine the gas or explore for oil subsequent to this release. Also, at this time his wife, Elma, received a one-half interest in Section 10.

Returning to the period before Claude Richardson received his interest in the property, one Ferd Bolton, in 1921, purchased oil and gas leases from the grantors and/or their successors in interest of the original mineral severance deeds. Eventually Citizens received assignments of these gas and oil leases from the surface owners of Section 10 in May, 1961. The assignment of these leases granted Citizens

"the exclusive right for the purpose of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil, gas, casinghead gas, casinghead gasoline, *and the exclusive right to inject, store and remove gas, whether native or otherwise, in and from the oil and gas strata underlying said premises*, regardless of the source of such gas or the location of the means of so doing, *with rights of way, and easements for drilling equipment and operating wells. . . .*" (Emphasis added.)

The Richardsons became aware of Citizens' interest in the spring of 1963 when they discovered Citizens' drilling exploratory wells on Section 10. By 1965 exploration was completed and production wells were operating in conjunction with Citizens' Linton gas storage field. Instead of attempting to stop Citizens' drilling, the Richardsons discussed leasing their interest to Citizens. However, these discussions ceased after they were unable to agree on an acceptable money figure. Ultimately, the Richardsons instituted the present action against Citizens on January 2, 1973.

## DECISION AND DISCUSSION

### A. *Issue One*

■ The Richardsons first claim the partial summary judgment was erroneously granted by the trial court in Citizens' favor on the issue of ownership of the gas and oil rights since it failed to comply with the ten day service requirement of T.R. 56(c)[3] and, consequently, denied them an opportunity to prepare affidavits and marshal evidence in opposition to the motion. The Richardsons request a reversal of the summary judgment on the ownership issue with a concomitant opportunity to present evidence on this issue. Citizens argues that the Richardsons waived this issue by failing to raise it either in their response to its motion (filed on March 8, 1977), or orally before the court at the hearing held the same day. Furthermore, Citizens characterizes the Richardsons' request for a favorable partial summary judgment on the same issue as a waiver of this issue.

A review of the record submitted to this Court reveals the trial court, after a pre-trial conference (held on November 19, 1976), entered an order which set a hearing for March 8, 1977 on all motions filed on or before March 1. Citizens' objections and alternative motion were filed on February 28 with the Richardsons filing their written response including their own motion for partial summary judgment on the day of the hearing. This hearing is not in the record before this Court since, as acknowledged by the parties in their briefs, it was not transcribed; consequently, we are unable to determine whether the Richardsons orally objected to Citizens' failure to satisfy T.R. 56(C). However, we note that such an objection was not raised in their written

response. Furthermore, at the May 31, 1977 hearing on the Richardsons' initial Motion to Correct Errors (relating to the March 8, 1977 partial summary judgment), their attorney admitted telling the court at the *March 8 hearing* that other than the 68 exhibits previously submitted to the court, he had no evidence to present contrary to the objections and motion or in support of the Richardsons' motion. Finally, from the transcript of the May 31 hearing it is obvious that the Richardsons' attorney, utilizing these exhibits, argued against the objections and motion on March 8. The Richardsons' failure to include an objection to the motion based upon T.R. 56(C) in their written response, as well as their failure to provide a record of the March 8 hearing from which we could determine whether an oral objection was made, constitutes a waiver of this issue. *Commissioner, Ind. St. Highway Dept. v. Collins,* (1980) Ind.App., 413 N.E. 982; *Piskorowski v. Shell Oil Co.,* (1980) Ind.App., 403 N.E.2d 838; *Ahnert v. Wildman,* (1978) Ind.App., 376 N.E.2d 1182.

### B. *Issue Two*

■ The Richardsons next challenge the summary judgment entered on the issue of the ownership of the gas and oil rights arguing that the phrases contained in the 13 original severance deeds and in the 1933 deed were susceptible to more than one interpretation. According to the Richardsons this presented a material factual question proper for a determination by a jury. Citizens responds that the interpretation of these conveyance phrases in the deeds is not a factual issue but a legal one properly within the province of the trial court through its Motion for Summary Judgment.[4]

---

3. T.R. 56(C) requires that: "The motion [for summary judgment] shall be served at least ten [10] days before the time fixed for the hearing . . . ."

4. The phrases utilized in the severance deeds as well as in the Richardsons' deed ("coal and other minerals" plus "coal, clays, minerals and mineral substances") are interpreted to include gas and oil unless a contrary intention or an ambiguity is manifested by the language of the instrument as a whole. *Monon Coal Co. v.*

*Riggs,* (1944) 115 Ind.App. 236, 56 N.E.2d 672; Annot., 37 A.L.R.2d 1435 (1959). *Monon Coal Co.* stands for the proposition "that absolute title to oil and gas *in situ* can not pass by an instrument of conveyance since the most that can be conveyed is limited to the exclusive right to explore the land for such gas and oil, to reduce it to possession and thereby acquire an *absolute ownership*." *Id.* at 240, 56 N.E.2d at 673. Therefore, when the Richardsons argue they possess title to the oil and gas underlying

In reviewing the grant of summary judgment, this Court applies the same standard as that applied by the trial court: summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Richards v. Goerg Boat & Motors, Inc.*, (1979) Ind.App., 384 N.E.2d 1084. Any doubt as to the existence of a genuine issue must be resolved against the proponent of the summary judgment motion. *Kochert v. Wiseman*, (1971) 148 Ind.App. 613, 269 N.E.2d 12; *Doe v. Barnett*, (1969) 145 Ind.App. 542, 251 N.E.2d 688. Even if no factual dispute exists, summary judgment is improper if different interpretations may be drawn from the undisputed facts. *McGinnis v. Public Service Co. of Indiana, Inc.*, (1974) 161 Ind.App. 1, 313 N.E.2d 708.

It is not disputed that of the 13 original severance deeds ten conveyed "coal and other minerals," two conveyed only "coal" and one conveyed "coal, clays, minerals and mineral substances." The Richardsons admit that none of the three original grantees dealt in gas or oil and the first historical reference to the existence of gas or oil fields in Greene County was not recorded until 1907 (two years after the last original severance deed was recorded). Additionally, it is not contested that in 1921 Ferd Bolton purchased gas and oil leases from the original grantors of the aforementioned severance deeds and the 1933 deed from the Probate Court Receiver Yeazel under which the Richardsons claim title specifically states it conveyed "coal and other minerals." Significantly, no lease for gas and oil exploration on Section 10 was not executed until 1943 (from Claude Richardson to the Sun Oil Co.) and, further, after gas was discovered by Sun Oil Co., the lease terminated with no further exploration for or mining of either substance pursuant to a lease from the Richardsons. Finally, the documents before the court demonstrated that when Citizens commenced storing gas in 1965 it did so at a depth of 2,000 feet while the Richardsons' coal was located at a depth of 42–146 feet.

Section 10, they effectively argue that they own the right to explore for oil and gas, reduce such

Since the facts are not disputed and the complaint was being tried to the trial court, the question to be resolved is whether the different conveyance phrases contained in the original severance deeds and the Richardsons' 1933 deed are susceptible to more than one inference concerning the conveyance of gas and oil rights along with the conveyance of "coal and other minerals." Because this phrase was ambiguous, in resolving this question the trial court was entitled to consider the circumstances surrounding the original severance deeds to ascertain the original grantors' intent. *Besing v. Ohio Valley Coal Co., Inc.*, (1973) 155 Ind.App. 527, 293 N.E.2d 510; *Monon Coal Co. v. Riggs, supra.* We believe the law as stated in *Besing* and *Monon Coal Co.* support the trial court's partial summary judgment ruling.

In *Monon Coal Co. v. Riggs, supra,* James Riggs sued Monon Coal Co. to quiet title to oil and gas underlying the surface of certain property in Sullivan County under which property Monon Coal Company mined coal. Monon Coal Company filed a cross-complaint to quiet title to the gas and oil interests. After judgment was entered for Riggs, Monon Coal Company appealed to this Court. As recited by this Court, the facts demonstrated that on January 14, 1904 Riggs by warranty deed conveyed to the New Pittsburgh Coal and Coke Company " '*all the coal and fireclay and minerals underlying the surface*' " of the property. *Id.,* 115 Ind.App. at 238, 56 N.E.2d at 672. (Emphasis added.) Monon Coal Company succeeded to New Pittsburgh Coal's interest in 1918. At the time of execution and delivery of the original severance deed the original grantee (New Pittsburgh Coal) was engaged exclusively in the mining of coal and had never explored for oil in Sullivan County. Further, the original grantee permitted acts and operations on the land inconsistent with any claim of right to oil and gas since in the year 1909 (five years after

minerals to their possession and thereby acquire absolute ownership over the oil and gas.

the execution and delivery of the original severance deed) it permitted Riggs without objection to drill for oil on the property. Also, the general manager of the company co-operated with Riggs by furnishing a survey in order that Riggs' drillers could avoid the main entries of the company's coal mine. Similarly in 1919 Monon Coal Company permitted Riggs to drill for oil and asserted no adverse claim or interest. *Id.* at 242, 56 N.E.2d at 674.

The Court first noted that although oil and gas underlying the surface of lands are "mineral" yet it recognized that these substances "are minerals with peculiar attributes not common to other minerals because of their furtive nature or vagrant habits . . ." and the fact that they "may be classed by themselves as minerals ferae naturae is also too well settled to admit of argument." *Id.* at 240, 56 N.E.2d at 673. The Court then quoted from the case of *Heller v. Dailey,* (1902) 28 Ind.App. 551, 561, 63 N.E. 490, 492 where it was stated:

"If by such general terms all of a specified solid mineral; as coal, in and under the land were granted, it would be a grant of real estate * * *; but, because of the fluidity and fugitiveness of petroleum and natural gas, the absolute ownership of these mineral substances within the land cannot be acquired without reducing them to actual control, so that a distinction must be and is made between these elusive minerals in and under the ground and the solid minerals in place in the earth. Therefore, a grant of all the oil and gas in and under a tract of land is not a grant of any particular specific substance, as would be a grant of the coal in and under certain land.

The owner of land is not, by virtue of his proprietorship thereof, the absolute owner of the oil and gas in and under it in its free and natural state, not yet reduced to actual control of any person * * *."

The Court explained that, unlike coal, absolute title to gas and oil in place cannot pass by an instrument of conveyance "since the utmost that can be conveyed is limited to the exclusive right to explore the land for such gas and oil, to reduce it to possession and thereby acquire an absolute ownership." *Id.* at 240, 56 N.E.2d at 673. Thus the Court concluded that where the grantor, instead of using the words oil and gas to indicate the subject-matter of the grant uses the term minerals, "it at once becomes a question as to whether oil and gas were intended to be included." *Id.* at 240, 56 N.E.2d at 673.

Since the deed in question was ambiguous, this Court held that the trial court had a right to place itself in the position of the parties at the time the severance deed was executed and "to consider the surrounding circumstances in order to ascertain the intent of the parties and to receive parol evidence in aid thereof." *Id.* at 240, 56 N.E.2d at 674. The Court then examined Monon Coal Company's claim the evidence did not support the trial court's conclusion that the deed did not convey oil and gas rights and after reviewing the previously stated facts held the evidence supported the trial court's findings. *Id.* at 241, 56 N.E.2d at 674.

In *Besing v. Ohio Valley Coal Co. of Kentucky, supra,* Ohio Valley Coal brought an action against Jesnia Besing and W. W. Sipp to quiet title to land and for a declaratory judgment involving the proper interpretation of a mineral deed conveying on June 30, 1940 from the Cynthiana State Bank to Victor C. Besing "a undivided one half (½) interest in and to all of *the oil, gas and other minerals* in and under, and that may be produced from" the deeded property. *Id.,* 155 Ind.App. at 529, 293 N.E.2d at 511. (Emphasis added.) Subsequently, Victor and Jesnia conveyed an undivided ¼ interest to W. W. Sipp and eventually Jesnia inherited Victor's ¼ interest. On December 28, 1970 Ohio Valley Coal obtained by warranty deed from the successors in title to the Cynthiana State Bank all of the interest in the *"coal and other minerals mixed with coal"* which the Bank owned after its conveyance to Besing in 1940. *Id.* at 536, 293 N.E.2d at 515. The trial court ruled the phrase "the oil, gas and other

minerals" contained in the original conveyance did not include coal. This Court, on appeal, affirmed the trial court's decision.

In reaching its decision this Court, citing *Monon Coal Co. v. Riggs, supra,* noted that the contested phrase was ambiguous and, therefore, the circumstances attending the original severance could be examined. This Court then concluded as follows:

"Before the conveyance from the Cynthiana State Bank to Victor Besing on July 1, 1940, Besing engaged in numerous transactions in the oil business in Posey and Gibson counties, including the purchasing and selling of oil and gas leases, and oil and gas interests in fee simple. Besing did not engage in the purchase and sale of coal interests or coal leases in Posey or Gibson County. The language used in the mineral deed from the Bank to Besing is substantially the same as the language used by oil companies in instruments by which they obtained and conveyed oil interests in the local area. During the period from July, 1940, until approximately the year 1965, although coal was known to be present in Posey County, it was not generally considered to be commercially minable or recoverable coal, and there was no active program to lease or purchase coal rights as such in Posey County. At the time of the conveyance by the Bank to Victor Besing, the real estate conveyed was subject to an oil and gas lease which was specifically referred to in the deed. From these findings of fact, which are unchallenged on appeal, the court concluded that there was no intention to convey an interest in coal. It is our opinion that the evidence as set out in the foregoing findings of fact is sufficient to support the trial court's judgment.

It is apparent in viewing the circumstances surrounding this transaction that the parties to the conveyance were preoccupied with oil and gas and did not evidence a specific intent to include or exclude coal."

*Id.* at 532–33, 293 N.E.2d at 513.

Returning to the case at bar, we note that it is undisputed that at the time of the original severance deeds from 1899 to 1905 neither oil nor gas had been discovered in Greene County. Further, after these substances were discovered in 1907, the original grantors of the coal interest conveyed to Ferd Bolton in the early 1920's their remaining interest in oil and gas. Therefore, only one inference arises from these undisputed facts, i. e., the phrases in the original severance deeds conveyed to original grantees interests only in coal and no interest in gas or oil. Consequently, the Richardsons as successors in interest to the original coal grantees did not purchase or possess any interest in oil or gas and the trial court's grant of partial summary judgment on the ownership issue was correct.

## C. *Issue Three*

The Richardsons object to the exclusion of testimony from one of their expert witnesses at the June 1, 1977 hearing. By way of background we note that at the conclusion of the March 8, 1977 hearing the trial court set a subsequent hearing on the second issue raised by Citizens' summary judgment (i. e., the compatibility of coal mining over and in the vicinity of gas storage areas). The court specifically directed each party to present the reports of their expert witnesses on this issue by April 22, 1977. However, contrary to the court's specific direction in this regard, the report of Richard L. Powell (one of the Richardsons' two experts on this issue) did not discuss the compatibility issue: rather, it contained only Powell's view on the existence of coal reserves in Section 10 and the feasibility of removing such coal. When the Richardsons presented Powell as an expert witness at the June 1, 1977 hearing, Citizens objected to his qualifications as an expert on the compatibility issue since his report failed to treat this subject. The trial court sustained the objection without hearing any testimony from Powell and the Richardsons' attorney tendered an offer to prove claiming Powell would qualify as an expert and that he would testify that gas and oil mining were incompatible. The Richardsons argue

the trial court abused its discretion in refusing to admit Powell's testimony.

 Generally, a determination of a witness's qualification as an expert is within the trial court's sound discretion. *In re Adoption of Lockmonday*, (1976) 168 Ind. App. 563, 343 N.E.2d 793, and absent a clear showing of an abuse of discretion, the trial court's decision will not be disturbed on appeal. *Northern Indiana Public Service Co. v. Otis*, (1969) 145 Ind.App. 159, 250 N.E.2d 378. First we note that, with regard to Powell's expertise, the Richardsons in their brief acknowledged Powell had no actual experience mining coal within a gas storage field. However, most significant to our resolution of this issue is the fact that the Richardsons' second expert witness was permitted to reveal through his report and testimony, his opinion that the mining of coal and gas was incompatible. The Richardsons do not suggest that Powell's testimony would have differed from that of their other expert and, thus, have not demonstrated to us that matters would have been presented to the court other than those already in evidence. Here, there has been no showing that the offered evidence was other than cumulative and a trial court does not commit error, and the plaintiff would not be prejudiced, by the exclusion of merely cumulative evidence. *Terrell v. Palomino Horse Breeders of America*, (1980) Ind.App., 414 N.E.2d 332.

## D. *Issues Four and Five*

 Next the Richardsons claim the evidence is insufficient to support either the trial court's judgment that Citizens possessed reasonable easements in gross through their coal to remove its gas or that such easements measured 300 feet in diameter. We have reviewed the evidence submitted to the trial court and hold it supports the court's conclusion. The original grantors conveyed only the right to explore for coal; they retained title to the gas and oil exploration rights as well as the right to reduce such minerals to their control. In retaining such rights, these grantors impliedly reserved easements through the coal

for drilling purposes. By introducing evidence that the gas storage fields were below the coal, Citizens established the need for utilizing these easements reserved by the original grantors which were conveyed to the subsequent surface owners and leased by Citizens. *Pyramid Coal Corp. v. Pratt*, (1951) 229 Ind. 648, 99 N.E.2d 427. Finally, through demonstrating that federal law dictated 300 feet safety barrier around each well, Citizens provided adequate support for the court's decision.

## E. *Issue Six*

 After completing the June 24 hearing on the taking issue, the trial court ruled in Citizens' favor stating that no compensible taking had occurred. The Richardsons attack this ruling as contrary to law, premising their argument on the assumption that Citizens did not possess any easements through their coal. However, since Citizens introduced evidence establishing such easements, the trial court's ruling is not contrary to law. *Pyramid Coal Corp. v. Pratt, supra.*

## F. *Issues Seven and Eight*

 The final issues raised by the Richardsons challenge the trial court's summary judgment in favor of Citizens on the taking issue arguing the court failed to enter an affirmative finding as to the absence of any genuine issues of material facts and did not state with particularity its reasons for granting the judgment. However, where a trial court disposes of all issues and claims in a case by entering summary judgment in favor of one of the parties, the court is not obligated to make findings of fact and conclusions of law on such issues and claims upon which the summary judgment was granted. *Meier v. Pearlman*, (1980) Ind. App., 401 N.E.2d 31; *Richards v. Franklin Bank & Trust Co.*, (1978) Ind.App., 381 N.E.2d 115; *Ahnert v. Wildman, supra.*

Judgment affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.