**GANGLOFF INDUSTRIES, INC.**
**Appellant–Defendant,**

v.

**GENERIC FINANCING AND**
**LEASING, CORPORATION,**
**Appellee–Plaintiff.**

No. 09A02–0809–CV–797.

Court of Appeals of Indiana.

June 16, 2009.

Jeffry G. Price, Peru, IN, Attorney for Appellant.

William B. Bryan, Angola, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Gangloff Industries, Inc. appeals the trial court's judgment on Generic Financing and Leasing Corp.'s complaint for immediate possession and damages filed after Gangloff took possession of a certain truck of which Generic claimed ownership. Gangloff raises six issues for our review, which we consolidate and restate as two: 1) whether the agreement between Generic and Robert Bougher was a lease or a security interest in the truck, and 2) if it was a security interest, whether the possessory lien Gangloff asserted took priority. Concluding that the agreement is a security interest and that Gangloff's possessory lien had priority, we reverse and remand.

*Facts and Procedural History*

On September 23, 2005, Robert Bougher entered into an agreement titled "Lease Agreement" with Generic concerning a 2000 Western Star semi-truck. The agreement provides, in relevant part, as follows:

> This lease agreement made on this 23rd day of September 2005 between Generic Financing and Leasing, Corp. (hereinafter called Lessor) and Robert N. Bougher Jr. (hereinafter called lessee)....
>
> *1) Lease:* Lessor hereby leases to and lessee hereby leases from Lessor a certain motor vehicles [sic], hereinafter referred to as the "Leased Property," described as follows:
>
> \* \* \*
>
> 2000 Western Star
>
> 2. *Lease Term:* This lease shall become effective upon the day and date above and shall continue until the 23rd of November 2008.
>
> 3. *Rental:* Lessee shall pay to Lessor a Rental of $43,051.95 payable in installments of $1,099.00 per month, the first payment being due and payable on the 23rd day of October 2005, and a like sum due and payable on the same date of each succeeding month during the term of this lease....

Should Lessee be in default of any payments including taxes, insurance, licensing, rent, and any other under this lease, said delinquent payment shall bear interest at the rate of 18% per annum.

4. *Ownership:* It is expressly understood that this is an agreement for lease only, and that the Lessee acquires no right, title, or interest in or to the Leased property other than the right to the possession and use of the same in accordance with the terms of this lease.

\* \* \*

6. *Repair:* Lessee shall, at it's [sic] own expense, provide suitable and adequate garage space and service for said truck ... and shall maintain said truck in good repair, mechanical condition, and running order.... Repair shall include any and all work needed to be done on the truck completely overhaul if the engine blows or any other, all at the expense of the Lessee.

\* \* \*

9. *Licenses:* Lessee shall provide and maintain, at his own expense, all necessary owner's vehicle licenses and license tags for said truck. Lessee shall be responsible for all permits regarding the truck or it's [sic] operation.

10. *Highway Use Tax and Licenses:* Lessee shall provide and maintain, at his own expense, all necessary owner's vehicle licenses and license tags for said truck and shall also be responsible for the highway use tax and all permits regarding the truck or it's [sic] operation.

\* \* \*

12. *Insurance:*

A) Lessee will, at it's [sic] own expense, provide and maintain for the term of this lease, public liability and physical damage insurance on the Leased Property covering both the Lessee and the Lessor....

Such policies of insurance shall be carried with a company or companies approved by the Lessor. Such policies of insurance shall also be issued in the name of the Lessor and the Lessee, as their respective interests may appear....

13. *Default:* That if there is any default by the Lessee in the payments required hereunder when due or any breach of covenants or conditions in this agreement by the Lessee ... the Lessor may hold, take possession of, or repossess the vehicle(s) until such default is cured.... In case of any such default or breach, the Lessor shall also have the right, to terminate this agreement.... The Lessor shall be entitled to repossess the vehicle and to dispose of the vehicle in any reasonably commercial fashion.... The Lessor shall be entitled to reimbursement for expenses including reasonable attorney fees in enforcing this lease.

\* \* \*

24. If the Lessee fails or neglects to comply with any term or condition of this lease, or to make any payment provided for herein, when due or payable, or violate any of the provisions hereof, or if the Lessor should feel insecure or deem the property in danger of misuse or confiscation, or if the Lessee makes any misrepresentation as to his name, address, or occupation, the Lessor at his option and without notice to the Lessee may declare the whole amount unpaid hereunder immediately due and payable.

\* \* \*

26. *Option to Purchase:* Upon the expiration of this lease and with the exercising of the option of purchase, the lessee may purchase from the Lessor the vehicle for the amount of $3,190.00.

Appellant's Appendix at 72–74.

On September 27, 2005, Bougher's wife, Kathy, and Gangloff entered into an "Own-

er Operator Service Contract" by which Kathy agreed to "furnish to [Gangloff], exclusively and continuously, during the term of this contract, the [2000 Western Star 3–axle semi-truck]," *id.* at 131; to pay all costs of operation, including maintenance costs and repairs; and to operate the equipment herself or "furnish sufficient employees to operate said equipment," *id.* at 134. Thereafter, Bougher began operating the truck to haul goods for Gangloff.

On March 13, 2007, the truck broke down and required repairs costing over $6,000. Gangloff paid for the repairs and Bougher was to re-pay Gangloff. On July 19, 2007, Bougher was re-fueling his truck at a truck stop when he suffered a heart attack from which he ultimately died. Kathy contacted Gangloff to recover the truck and trailer from the truck stop, which it did. Gangloff took possession of the truck and placed it in a secure location pending Kathy's removal of the truck and payment for its recovery and storage. Gangloff retained possession of the truck until January 7, 2008, on which date a court order granted Generic immediate possession.

On August 3, 2007, Generic filed in Steuben County a Complaint for Immediate Possession and Damages against Gangloff, alleging that it was the owner of the truck, that Bougher had defaulted under the terms of the lease, and that Gangloff was unlawfully holding the truck for debts Bougher owed it. Generic sought treble damages and attorney fees for theft and conversion. The case was subsequently transferred to Cass County as a preferred venue. Gangloff filed a counterclaim alleging that it had a possessory lien on the truck for the repairs it paid for and for the recovery and storage of the truck. Gangloff also asserted a claim for quantum meruit. On January 7, 2008, the trial court issued an order for immediate pos-

session, finding that Generic was likely to prevail at trial and should be awarded possession of the truck. Gangloff ceded possession of the truck to Generic as ordered.

Following a trial on March 26, 2008, the trial court issued the following judgment:

This matter came before the Court for trial on March 26, 2008. [Generic] was present by employee, Tim [Lawton], and by counsel, William Bryan. [Gangloff] was present by Chief Executive Officer, Randy Ferguson and by counsel, Jeff Price. Evidence was presented. At the close of evidence, counsel were given the opportunity to submit written arguments. A schedule was set up for filing. [Generic] filed a memorandum, [Gangloff] filed a memorandum, and [Generic] filed a response. Subsequently, on April 21, 2008, [Generic] filed a motion to strike [Gangloff's] memorandum of law on the basis that it was filed late. That motion to strike [Gangloff s] memorandum is hereby denied. Having taken the matter under advisement the Court now finds and rules as follows:

It is the judgment of the Court that [Generic] shall recover from [Gangloff] as follows:

| | | |
|---|---|---|
| 1. | Excess Repossession Expenses (1/2 of the total for expense of repossession) | $ 504 |
| 2. | Lost lease income (Due to improper withholding of the truck for the period From 7/24/07 to 1/7/08) | 6,034 |
| 3. | Travel expenses for witnesses to appear at Court hearings | 264 |
| 4. | Attorney Fees | 6,849 |
| | TOTAL | $13,651 |

[Gangloff] filed a counter claim against [Generic]. Judgment is entered for [Generic] on the counter claim filed by [Gangloff].

Total amount of the judgment ordered by the Court is as indicated above. [Generic] has asked the Court to award treble damages under I.C. 34–24–3–1. The Court specifically denies that request.

[Gangloff] points out in the memorandum submitted that Steuben Superior Court granted [Gangloff's] motion to transfer the erroneous venue of the case on August 5, 2007, without ruling on [Gangloff's] request for attorney fees. This Court will consider that issue upon motion and further hearing if necessary. *Id.* at 4–5.

Both parties filed motions to correct error and both motions were denied. The trial court did note, however, that a hearing on Gangloff's request for attorney fees occasioned by the motion to transfer "will now be set by a separate Order." *Id.* at 197. Gangloff now appeals.[1]

### Discussion and Decision

#### I. Standard of Review

The parties disagree as to the appropriate standard of review to apply to this case. Gangloff contends the trial court *sua sponte* issued findings of fact and conclusions of law and we should apply the two-tiered standard of reviewing whether the evidence supports the findings and whether the findings support the judgment. *See* Appellant's Brief at 7 (citing *Bank of America, N.A. v. Ping,* 879 N.E.2d 665, 669 (Ind.Ct.App.2008)). Generic contends the trial court's judgment is a general judgment which we review for substantial evidence of probative value supporting the judgment on any legal theory. Appellee's Brief at 5 (citing *Boetsma v. Boetsma,* 768 N.E.2d 1016, 1018–20 (Ind.Ct.App.2002), *trans. denied* ).

■ *Sua sponte* findings control only as to the issues they cover, and a general judgment controls as to the issues upon which there are no findings. *Gibbs v. Kas-*

hak, 883 N.E.2d 825, 827 (Ind.Ct.App. 2008). The trial court set out the individual elements of the damages awarded, and we will consider that a special finding. The remainder of the judgment is a general judgment. *See Matter of Lockmondy's Adoption,* 168 Ind.App. 563, 570, 343 N.E.2d 793, 797 n. 6 (1976) ("A general finding is a finding in favor [of] one party and against the other."); *Dean v. Dean,* 439 N.E.2d 1378, 1382 (Ind.Ct.App.1982) ("Special findings of fact have been said to consist of all the facts necessary to a judgment for the party in whose favor conclusions of law are rendered."). In reviewing issues about which the trial court made special findings, we determine whether the evidence supports the findings and whether the findings support the judgment. *K.I. ex rel. J.I., v. J.H.,* 903 N.E.2d 453, 456 (Ind.2009). A judgment will be set aside only if it is clearly erroneous; that is, if there is no evidence supporting the findings, the findings fail to support the judgment, or if the trial court applies the wrong legal standard to properly-found facts. *Id.* A general judgment, on the other hand, will be affirmed if it can be sustained on any legal theory supported by the evidence. *Piles v. Gosman,* 851 N.E.2d 1009, 1012 (Ind.Ct.App.2006).

#### II. Generic and Bougher's Agreement

■ Gangloff first contends that the agreement between Generic and Bougher, though labeled a lease, was in fact a security interest. A security interest is defined by Indiana Code section 26–1–1–201(37) as "an interest in personal property or fixtures which secures payment or performance of an obligation." "The pri-

---

1. Generic filed a motion to dismiss Gangloff's appeal alleging that Gangloff's motion to correct error had not been timely filed. This court dismissed the appeal with prejudice on December 15, 2008. Gangloff then filed a petition for rehearing regarding the dismissal.

This court granted the petition for rehearing, vacated the December 15, 2008, order dismissing the appeal, and denied Generic's motion to dismiss. The case proceeded pursuant to the regular timeline from that January 15, 2009, order.

mary issue to be decided in determining whether a lease is 'intended as security' is whether it is in effect a conditional sale in which 'lessor' retains an interest in the 'leased' goods as security for the purchase price." *United Leaseshares, Inc. v. Citizens Bank & Trust Co.*, 470 N.E.2d 1383, 1386 (Ind.Ct.App.1984) (quoting *Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1142 (7th Cir.1982)). Including · a lease intended as security in the statutory definition of a security interest "represents the drafter's refusal to recognize form over substance." *Id.* The definition itself provides guidance for distinguishing a true lease from a lease intended as security:

Whether a transaction creates a lease or security interest is determined by the facts of each case. However, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(d) the lessee has an option to become the owner of the goods for no addi-

tional consideration or nominal additional consideration upon compliance with the lease agreement.

* * *

For purposes of this subsection:

(x) Additional consideration is not nominal if:

(i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

(ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

(y) "Reasonably predictable" . . . [is] to be determined with reference to the facts and circumstances at the time the transaction is entered into.

Ind.Code § 26–1–1–201(37).[2]

The statute unequivocally states that an agreement is a security interest if (1) the consideration the lessee is to pay the lessor is an obligation for the term of the lease and the lessee may not terminate the obligation; *and* (2) one of four enumerated conditions applies. Here, the only potentially relevant condition is (d), that the lessee has the option to become the owner

---

**2.** This part of the definition prior to 1991 provided:

Whether a lease is intended as security is to be determined by the facts of each case. However:

(a) the inclusion of an option to purchase does not of itself make the lease one intended for security; and

(b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security.

of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement. Under the agreement, Bougher was obligated to pay Generic a total of $43,051.95 in monthly installments of $1,099.00 per month over a period of thirty-eight months.[3] A Generic representative testified at the hearing that the consideration was based on "the price of the truck [4] plus the interest ... [d]ivided by the months to get the payments." Transcript at 23. Generic alone had the option to terminate the agreement prior to the term fixed therein. Thus, the agreement meets part (1) of the statutory test. *Cf. W.H. Paige & Co. v. State Bd. of Tax Comm'rs,* 711 N.E.2d 552, 560 (Ind.Tax 1999) (rent-to-own agreement did not create a security interest even though lessee, if seeing agreement through to the end of its term, would be foolish not to exercise the option to purchase for nominal consideration because lessee had right to terminate the agreement at any time), *trans. denied.*

As for part (2) of the statutory test— that the lessee has the option to become the owner of the goods for nominal additional consideration[5] upon compliance with the agreement—additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised. Ind.Code § 26-1-1-201(37). The "reasonably predictable cost" is to be determined by reference to the facts and circumstances at the time the agreement was made. *Id.; see also Orix Credit Alliance, Inc. v. Pappas,* 946 F.2d 1258, 1261–62 (7th Cir.1991) (noting that nominal consideration can be determined by reference to the total rental price of the goods, by its relation to the fair market value of the goods at the time the option arises as anticipated by the parties when the agreement was executed, and the extent to which the total rental exceeds the purchase price). However the test is articulated, "the courts are clear upon one thing, which is that where the terms of the lease and option purchase are such that the only sensible course of action for the lessee at the end of the term is to exercise the option to purchase and become the owner of the goods, then the lease is one intended to create a security interest." *United Leaseshares, Inc.,* 470 N.E.2d at 1387. At the conclusion of the term of the agreement, Bougher had the option to purchase the truck for $3,190.00, which was "10% of the financed amount." [6] Tr. at 24. Had Bougher seen the agreement through to its conclusion, he would have paid a total of $45,762.00 (by our calculation including the down payment) for use of the truck for approximately three years. The only sensible course of action would have been to exercise the option and purchase the truck for a fraction of the total rental price.[7] *See In re Beker Indus. Corp.,* 69 B.R. 937, 940 (Bankr.S.D.N.Y.1987) (collecting cases finding option prices ranging from 10% to

3. Multiplying the monthly payment by the number of payments does not yield the total amount cited as due under the agreement, even considering the $4,000 down payment Bougher made. Tr. at 24.

4. Generic apparently bought the truck at an auction. Tr. at 26.

5. The condition also applies if no additional consideration is required, but that provision is not relevant to the facts of this case.

6. Again, the math does not seem to be accurate. By our calculation, the "financed amount" is $41,762.00 ($1,099.00 × 38 months) and the option price is 7.6% of that amount. Using the numbers in the agreement, the option price is 7.4% of the total rental. However, our result is the same regardless of which figures are used.

7. The parties did not introduce any evidence regarding what the fair market value of the semi-truck would be at the expiration of the agreement.

25% to be nominal). We therefore conclude that the agreement created a security interest rather than a true lease.[8]

## II. Respective Interests of the Parties

■ Gangloff next contends that it had a possessory lien on the truck with priority over Generic's security interest. Indiana Code section 9–22–5–15(a) and (b) grants to an entity that "performs labor, furnishes material or storage, or does repair work on a … semitrailer … at the request of the person who owns[9] the vehicle" or that provides towing services a lien on the vehicle for the reasonable value of the charges for labor, materials, storage, repairs, or towing. A possessory lien on a motor vehicle is perfected by retention of possession of the vehicle by the person asserting the lien. *Jones v. Harner*, 684 N.E.2d 560, 562 (Ind.Ct.App. 1997). As Gangloff had possession of the semi-truck until ordered by the court to turn over possession to Generic, Gangloff held a possessory lien for purposes of this discussion. *Cf. Hendrickson & Sons Motor Co. v. Osha*, 165 Ind.App. 185, 208, 331 N.E.2d 743, 757 (1975) (holding that repairman waived any right to a possessory lien which might have arisen by voluntarily surrendering possession of automobile after performing repairs). Indiana Code section 26–1–9.1–333(a) defines a possessory lien as an interest

(1) that secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2) that is created by statute or rule of law in favor of the person; and

(3) whose effectiveness depends on the person's possession of the goods.

Pursuant to the statute, "[a] possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." Ind.Code § 26–1–9.1–333(b). Indiana Code section 9–22–5–15 is silent as to the priority of competing liens, and therefore Gangloff's possessory lien takes priority over Generic's security interest.[10] Accordingly, the trial court's

---

8. Prior to the 1991 amendment, our courts considered the following facts relevant to the determination of whether an agreement was a true lease or a security interest: a) the total amount of rent the lessee is required to pay; b) whether the lessee acquires any equity in the property; c) the useful life of the leased goods; d) which party is responsible for the payment of taxes, insurance and other expenses normally associated with ownership; e) which party bears the risk of loss; and f) the extent of the lessee's liability upon default. *See Morris v. Lyons Capitol Resources, Inc.*, 510 N.E.2d 221, 223–24 (Ind.Ct.App.1987). Although Indiana Code section 26–1–1–201(37) as amended provides that an agreement does not create a security interest *merely* because it contains certain provisions which our courts previously considered probative, it does not prohibit consideration of them. Here, Bougher had the risk of loss, was required to pay all expenses normally associated with ownership, and was liable for the entire unpaid amount in the event of default.

9. Because Bougher was required by the terms of the agreement to provide "suitable and adequate … service" for the semi-truck at his own expense and to "maintain said truck in good repair, mechanical condition, and running order," appellant's app. at 72, he was authorized by Generic to procure necessary service. *Yellow Mfg. Acceptance Corp. v. Linsky*, 99 Ind.App. 691, 192 N.E. 715, 718 (1934). This is true notwithstanding a provision, such as in this agreement, that no liens shall be incurred, because "the law and not the consent of the parties creates the lien." *Id.*

10. Given our resolution of this issue, we need not determine whether Generic's security interest in the semi-truck was perfected. *See Conseco Fin. Servicing Corp. v. Friendly Village of Indian Oaks*, 774 N.E.2d 87, 97 (Ind. Ct.App.2002) (holding that possessory lienholder's lien takes priority over a perfected security interest when statute creating lien is silent as to priority), *trans. denied.* Even if Generic's security interest was perfected, the result would be the same.

judgment, including the award of damages and attorney fees, in favor of Generic cannot be sustained on any basis. We therefore reverse the trial court's judgment and remand to the trial court for consideration of the appropriate damages consistent with this opinion.[11]

### Conclusion

The trial court's judgment and award of damages in favor of Generic is reversed and the case is remanded for further proceedings.[12]

Reversed and remanded.

DARDEN, J., and BAILEY, J., concur.

---

11. Upon obtaining possession of the semi-truck pursuant to the trial court's order, Generic re-leased the semi-truck, tr. at 25, despite having notice that Gangloff was asserting a lien on the semi-truck. Therefore, the semi-truck cannot now be handled in the manner required by Indiana Code sections 26–1–9.1–610 et seq. for disposition of collateral after default. Additional evidence may be required in order for the trial court to determine what the appropriate outcome should be notwithstanding the erroneous order of possession.

12. Gangloff claims entitlement to attorney's fees incurred in challenging the improper venue in which Generic initiated this action. See Appellant's Brief at 21–22. As the trial court has not yet heard evidence regarding Gangloff's claim and therefore has neither granted nor denied the request, there is no issue on appeal for us to address.